## MRS. S. A. WILLIAMS v. C. B. MOORE ET AL.

### Decided November 7, 1900.

**1.  Agency—Subagent.**

See opinion for general discussion of the circumstances under which an agent may make his principal liable to or through a subagent.

**2.  Same.**

An owner of land having an agent employed at an annual salary to manage and lease her property instructed him to find a purchaser for a part of it. Neither his general employment nor his specific direction could be held to authorize him to employ a subagent to find such purchaser and bind his principal for commissions to such subagent for making the sale.

**3.  Same—Nonresident Agent.**

The principle on which authority to employ a subagent is implied from the fact that the business is to be done at a distance from the agent and presumably through others, does not apply where such agent, though living in a county other than that in which the land to be sold was situated, was visiting such county from time to time in attending to the leasing and management of it.

**4.  Liability for Subagent's Compensation—Cases Distinguished.**

Cases sustaining the power of an agent to bind his principal to a sale of land effected by him through a subagent at a price fixed by the principal, on the ground that the mere authority to find a purchaser, involving no discretion or judgment, may be delegated, are distinguished from those involving the agent's right to make his principal liable for compensation to such subagent in addition to that promised the agent himself.

**5.  Agency—Ratification—Accepting Volunteered Services.**

The owner of land for which a purchaser has been found by a subagent employed without her authority or agreement to compensate him, did not, by making sale to such purchaser after being informed of such subagent's part in procuring him to purchase, ratify the employment nor become liable for commissions on the sale. Such subagent was, as to the owner, a mere volunteer whose service, though known, could not deprive her of the right to sell to a purchaser on pain of ratifying his employment.

**6.  Ratification—Estoppel.**

Failure to repudiate the act of an unauthorized person, to operate as ratification, should embrace the essential elements of an estoppel, which it does not unless such person is injured by the failure to repudiate.

APPEAL from Williamson. Tried below before Hon. R. E. BROOKS.

*John W. Parker*, for appellant.

*C. B. Moore*, *W. W. Nelms*, and *C. A. Wilcox*, for appellees.

KEY, ASSOCIATE JUSTICE.—C. B. Moore brought this suit against Mrs. S. A. Williams and Charles Straub, the basis of the action being a claim for $877, alleged to have accrued from Mrs. Williams to Straub as compensation for procuring a purchaser of a tract of land sold by her. Straub transferred and guaranteed the claim to Moore. In his answer

he admitted liability and asked for judgment over against Mrs. Williams. Mrs. Williams pleaded the general issue. There was a trial without a jury, resulting in a judgment against both defendants, but Mrs. Williams only has appealed.

The trial judge filed the following conclusions of fact and law:

"(1)  I find that the defendant, Mrs. S. A. Williams, on about March 15, 1898, and many years prior thereto, was a feme sole and owned a large body of land in Williamson County, and also in Washington County, Texas, a considerable portion of which was in cultivation.

"(2)  That one A. J. Miller was the general agent of Mrs. Williams, who resided in Washington County, in the transaction of the management, renting and leasing of her lands and her business connected with said farms, and was duly employed by Mrs. Williams for such purpose for some six or eight years prior to March, 1898, and until January 1, 1900, and was paid an annual salary for such services.

"(3)  That Mrs. Williams decided to sell 777 acres of her land in Williamson County, which she had set apart to be given to her son, A. M. Williams, but the title to which remained in her, and that she instructed said A. J. Miller to find a purchaser for said land at a price of $25 or more per acre.

"(4)  That said Miller, who was not a real estate agent or engaged in selling lands, and resided in Washington County, employed the defendant C. A. Straub, who was a real estate agent in Taylor, in said Williamson County, engaged in the business of selling real estate, to sell said 777 acres of land.

"(5)  That said C. A. Straub found A. L. and J. F. Bowers, who were willing to buy said land, but were not willing to pay $25 per acre therefor. Straub showed said land to Messrs. Bowers and introduced them to A. J. Miller and A. M. Williams, and that said Miller and Williams finally agreed upon a sale of said land to said Bowers at the rate of $20 per acre, subject to the approval of Mrs. S. A. Williams, which agreement was reduced to writing and signed by the Bowers brothers and carried by Miller and A. M. Williams to Mrs. Williams for her signature, providing she agreed to same; that Mrs. Williams signed said writing in San Antonio, Texas, on April 16, 1898, and same was delivered to said Bowers brothers prior to the execution and delivery of the deed to said land by Mrs. Williams. That at the time of the execution of said memorandum of sale of said land by Mrs. Williams and its. delivery to said Bowers she did not know that Miller had employed Straub to sell the land and that he was claiming commission for selling said land to Bowers, but she did know such fact when she executed and delivered the deed conveying said land to Bowers, which she did on April 27, 1898.

"(6)  That Miller was the general agent of Mrs. S. A. Williams in the management of her farm, leasing and renting the same, collecting her rents, and the general manager of her farms, but had no general authority to sell her lands and no authority except that given in the third finding of fact herein, and no direct authority to employ an agent

to sell said land unless the authority to find a purchaser for said land would authorize him to employ an agent for that purpose.

"(7) That after the signing and delivery of said memorandum of sale, Mrs. Williams was informed of the fact that C. A. Straub had sold said land and was claiming a commission therefor, and that after such information said Bowers agreed to release the said Mrs. Williams from said written contract of sale, if she was dissatisfied with the terms of such sale and so desired, and that she voluntarily executed a deed for said land with the knowledge that the same had been sold by Straub, and that he was claiming commission therefor. Mrs. Williams never at any time acknowledged her liability for commissions nor promised to pay same.

"(8) That the reasonable value of said Straub's services in selling said 777 acres of land was 2½ per cent on the $20 per acre for which it sold.

"(9) That C. A. Straub after said sale made out his account for 5 per cent on amount of said sale against Mrs. Williams, and demanded payment of same which was refused, and he afterwards for a valuable consideration transferred said account to plaintiff and guaranteed payment of same, which account amounted to $877, which transfer was bona fide.

"Conclusions of Law.—From the foregoing facts I conclude as a conclusion of law that the defendant, Mrs. S. A. Williams, by authorizing A. J. Miller to find a purchaser for said land at not less than $25 per acre, authorized him to employ an agent to sell said land, and said Straub having found a purchaser for said land, and said Mrs. Williams having finally agreed to sell and did sell said land at $20 per acre to such person, the said Straub thereby earned his commission on such sale. And said Mrs. Williams after having voluntarily executed and delivered a deed to said land to said Bowers, that is, having availed herself of the services of said Straub, after his claim of authority to sell said land, even if he was not authorized to sell the same, would constitute a ratification of said employment by Miller of said Straub, and render her liable for the reasonable value of said services, which is 2½ per cent of the amount of said sale with 6 per cent interest thereon from January 1, 1899, for which amount judgment is rendered against Mrs. S. A. Williams in favor of plaintiff and against defendant C. A. Straub, in said guarantee of his account for full amount of same."

*Opinion.*—1. The case is submitted to this court on two assignments of error, the first challenging the trial court's conclusion of law, that Mrs. Williams, by authorizing Miller to find a purchaser for the land at not less than $25 per acre, authorized him to employ a subagent to sell the land. Under this assignment two points are made: (1) that Miller had no authority to employ a subagent to sell the land at any price; and (2) that if he had authority to employ a subagent, he could not employ one to sell the land for less than $25 per acre.

An agent is a person appointed to act for another in the transaction of some lawful business, and, in general, the power conferred upon an

agent is based upon special confidence or trust reposed in the agent, and such power, in the absence of authority express or implied, can not be redelegated by the agent so as to bind the principal. 1 Am. and Eng. Enc. of Law, 2 ed., 972; Smith v. Sublett, 28 Texas, 163. In the case cited the general rule and the exceptions thereto are thus stated: The doctrine in relation to substitution is that the authority is exclusively personal, unless from the express language used or from the presumption growing out of the particular transaction or the usage of trade, a broader power was intended to be conferred upon the agent. The general rule is also inapplicable when the acts to be done by the subagent do not require the exercise of judgment or discretion, but are purely mechanical or ministerial, in which case the agent, without express authority from the principal, may delegate his authority to a subagent and the principal, in some respects, be bound by the act of the latter; but in the majority of such cases, by the terms of the contract between them, the subagent looks to the agent for his compensation, and the authority of the latter to bind his principal for compensation to the subagent is not involved. But whatever be the character of the services rendered by the subagent, whether they involve the exercise of discretion or are purely ministerial, the principal ought not to be held liable to the subagent for compensation for such services unless by the contract between him and the agent he has expressly or impliedly authorized the agent to make a contract with the subagent binding him for such compensation, or has ratified such a contract after it has been made, or has by his conduct estopped himself from denying the agent's authority to make such contract.

If Miller was the general agent of Mrs. Williams, having the same powers that she possessed in reference to the sale of the land, then, of course, he had the power to bind her for compensation to a subagent. But that he was not such general agent is expressly declared in the sixth finding of fact, which refers to the third finding as embodying all the authority that Miller had to sell or employ a subagent to sell. That the third finding does not show that Miller has express authority to employ a subagent, even at his own expense, is manifest.

The findings do not show any custom or usage of trade pertaining to the sale of real estate through the medium of an agency as would warrant the conclusion that in directing Miller to find a purchaser for the land it was contemplated that he would, at Mrs. Williams' expense, delegate his authority to another agent, and bind her for compensation to the latter. Then can such authority be implied from what occurred between Mrs. Williams and Miller, viewed in the light of the circumstances then existing? It is obvious that what occurred between them had for its object the procurement of a purchaser of the land, and it conferred upon Miller authority to find a purchaser and negotiate a sale. Now if the attainment of that object required services which Mrs. Williams knew that Miller could not personally render, then he would be invested with implied authority to employ some one else to render them. For instance, the employment of one not a physician to nurse a sick man, with in-

structions to give him all necessary medical attention, will authorize the employment of a physician and bind the person employing the nurse to pay the physician, because the nurse could not be supposed competent to render proper medical attention.

So, if a nonresident owner of a tract of land in Texas should instruct a friend in New York to put it on the market and sell it, the agency thus created might carry with it the implied authority to employ another agent in Texas to sell the land, and bind the owner to compensate the subagent. This implied authority would result from the fact that under the circumstances stated the owner of the land could not expect the first agent to personally render the desired service; and therefore, intended that he should delegate his authority to some one else, and bind him for the compensation of the subagent.

But the case at bar is not similar to either of these illustrations. Any man of ordinary intelligence can negotiate a sale of real estate. It is doubtless true that, in the agricultural portions of this State, a large per cent of the sales of real estate is accomplished without the assistance of a broker. In this case, it is true that the land is located in Williamson County, and Miller resided in Washington County, and was not a real estate broker, but he was Mrs. Williams' general agent in leasing and managing all her lands in both counties, for which he was paid an annual salary. Whether this occupied all or only part of his time, is not disclosed by the record; but it is reasonable to suppose that in the performance of these services he made frequent trips to Williamson County and spent considerable time upon or in the vicinity of the land in question, and that he was acquainted with the people in the neighborhood thereof, and that by informing them that he was agent for the sale of the land, and by seeking a purchaser in Washington County, where he resided, he might have accomplished a sale without the assistance of a real estate broker. So it is not made to appear that Miller could not in person render the services that Mrs. Williams instructed him to render; and therefore, the facts of his not being a real estate broker and not residing in the county where the land is situated, do not justify the conclusion that he had implied authority to bind Mrs. Williams for compensation to a subagent.

It has been held by one of the appellate courts of this State that a verbal agency to sell real estate does not confer power to appoint a subagent and bind the principal by a contract of sale made by the subagent. Tynan v. Dullnig, 25 S. W. Rep., 466. Other courts have held that an agent to sell may appoint a subagent to show the property and bind the principal by the act of the subagent. Berwick v. Bancroft, 56 Iowa, 527; McKinnon v. Vollmar, 75 Wis., 82. These latter decisions rest upon the principle that showing the property is a ministerial act, involving no discretion or judgment, and may therefore be delegated. But there is a distinction, which must not be lost sight of in this case, between the right of an agent to perform a ministerial or mechanical act by the hand of another, and the power to bind the principal for compensation to such other person. If A employs B to haul a given quantity of sand, B may

perform his part of the contract by procuring C to haul the sand; but he would have no power to bind A to pay C for so doing. So in this case, Miller in the performance of his agency may have had the right to employ, at his own expense, Straub or anyone else to show the land and find some one willing to purchase it; but, under the circumstances disclosed by the record, Miller had no authority to obligate Mrs. Williams to compensate anyone else for such services. She may have been liable to Miller for the value of these services, but she was not liable therefor to anyone else.

On the question under consideration, a modern text writer says:

"In general it may be said that if the broker employs a subagent to aid in the transaction in the absence of an understanding authorizing such employment, the subagent must regard the broker as his principal and look to him alone for his compensation.

"But it is said that where the employment of the subagent was pursuant to an agreement between the owner and his broker, the subagent may make a direct claim against the owner; and so, where the employment of the subagent is with the knowledge and consent of the principal and is recognized by him, it is said the subagent may look to him for compensation. But care must be taken in applying these exceptions. The owner has ordinarily agreed and expected to pay a certain sum or commission to the broker he employs, in case the latter effects a sale of the property. It is immaterial to him by what legitimate means the broker effects the sale. He may therefore very readily be supposed to witness the efforts of the subagent in that direction not only without opposition but with evident complacency. Yet it is not thence to be inferred that he is thereby bound to affirm or carry out every promise which his broker has without his knowledge made to the subagent. If the contract of employment between the owner and the broker provided for the employment of the subagent, under circumstances involving either an express or implied agreement on the part of the owner to compensate such subagent in addition to the commission to be paid to the broker, or if the broker has, with the knowledge and consent of the owner, *and in his behalf*, promised to pay the subagent for his services— in either such case the latter may look to the owner for compensation. Fitch on Real Estate Agency, 129.

As we hold that Miller had no authority to employ Straub and bind Mrs. Williams for his compensation to sell the land or find a purchaser therefor at any price, it becomes unnecessary to decide the second point raised under the first assignment. As a matter of fact, the court's findings do not show that in employing Straub Miller undertook to act for or bind Mrs. Williams, but the question of Straub's agency, except on the score of Miller's lack of power to appoint a subagent, is not presented under the first assignment, and in disposing of that assignment, we have given no force to the fact just alluded to; but in disposing of the question of ratification, under the second assignment, that fact will have to be considered.

2.   The other assignment is addressed to the second conclusion of

law, holding that Mrs. Williams had ratified Miller's employment of Straub, and was therefore liable for the value of the latter's services. Under this assignment, these points are made in appellant's brief: (1) that as no contractual relation whatever existed between Mrs. Williams and Straub, he was a mere volunteer, and she could accept or reject the offer to purchase the land without rendering herself liable to Straub for commissions; and (2) that as she bound herself by written contract to sell the land before she was informed of Straub's connection with the transaction, her subsequent consummation of the sale did not ratify Miller's unauthorized employment of Straub. In reference to this latter point, the court below in effect held that notwithstanding the written contract of sale, the offer by the purchasers to release Mrs. Williams therefrom left the consummation of the sale optional with her, and therefore her act in closing the deal was to be considered, on the question of ratification, just as if there had been no written contract of sale.

It is urged that this view is erroneous, because the offer to release was upon condition of her dissatisfaction with the terms of the sale, and that the findings do not show such dissatisfaction. The argument is that Straub's claim for compensation was no portion of the terms of sale, and therefore dissatisfaction on account of such claim was not such dissatisfaction as was essential to her release from the contract. This argument is not without plausibility, but we prefer to place our decision upon the broader ground embraced in the first point above stated. However, we do not wish to be understood as holding that there can be no ratification except where there is some contractual relation. The act of a stranger, as well as that of an agent acting in excess of his authority, may be ratified. Meacham on Agency, 110. But, conceding that closing the sale was optional with Mrs. Williams, that before executing the deed she had notice that Miller had employed Straub, and that the latter had rendered the services for which he claimed compensation, does it follow that she should be held liable to him under the doctrine of ratification? Ratification, strictly speaking, means adoption; but it is sometimes said to result from acts or conduct which constitute an estoppel, and it was probably in the latter sense that the trial court used the term. But let us see whether in either sense it can properly be held to exist in this case.

In the first place let us get a clear understanding of Straub's status in the transaction. We have already held that Miller had no authority to bind Mrs. Williams to pay Straub for the services rendered; and if that holding be correct, then no privity existed between Mrs. Williams and Straub, and, in so far as she was concerned, he was a mere volunteer. By this we mean that she was in nowise responsible for his participation in the transaction. She had not employed him, and she knew nothing of his connection with the matter until after he had done everything for which he claims compensation. As between him and Miller, his position was quite different. Miller, not having authority to bind Mrs. Williams for compensation to Straub, was himself liable to Straub for services rendered, although he may not have intended to incur such liability. There-

fore, in so far as the record discloses, Straub and his assignee are not without remedy, because if Mrs. Williams is not, Miller is liable for the services rendered by Straub.

Now, with this understanding of Straub's status in the matter, let us examine the facts to ascertain if Mrs. Williams is liable, under the doctrine of ratification either upon the ground of adoption or estoppel. The findings of fact do not show adoption in express terms; but on the contrary state that Mrs. Williams never at any time acknowledged her liability for commissions nor promised to pay the same. This finding implies that when Straub's claim was brought to her attention she denied liability therefor, and shows that she did not by adoption ratify Miller's conduct in promising compensation to Straub, if any such promise was made. But, as before said, the terms of the contract between Miller and Straub do not show whether Miller undertook to employ Straub to act for Mrs. Williams, or for him, Miller. The fourth finding, which is the only one that attempts to state the terms of the contract under which Straub acted, merely states that Miller employed him to sell the land. It is not shown that in so doing Miller purported to be acting as Mrs. Williams' agent and undertook to employ Straub to act for her, or whether he employed Straub to act for him, Miller, upon the understanding that Miller alone was to be liable for Straub's compensation. Whether anything more occurred between them than Miller telling Straub to sell the land, is not disclosed by the findings. Miller may not have disclosed to Straub the fact that he was acting as agent for Mrs. Williams, and may not have attempted to bind Mrs. Williams for Straub's compensation. Hence, as that fact is not made to appear, it can not be said that Mrs. Williams adopted or ratified a contract which sought to bind her for Straub's compensation.

In Bank v. Jones, 18 Texas, 825, our Supreme Court say:

" 'A ratification,' it is said, 'can only be effectual between the parties when the act is done, by the agent, avowedly for and on account of the principal, and not when it is done for, or on account of the agent himself, or of some third person. This would seem to be an obvious deduction from the very nature of a ratification, which presupposes the act to be done for another, but without competent authority from him; and therefore gives the same effect to the act as if it had been done by the authority of the party for whom it purported to have been done, and as his own act.' Story, Agency, sec. 251." See also Meacham on Agency, sec. 127. But, if it be conceded that Miller attempted to act for Mrs. Williams in employing Straub and that she knew that fact before she consummated the sale, we are still of the opinion that by so doing she did not ratify Miller's acts in that particular. The right of sale is one of the most valuable rights incident to the ownership of property, and it ought not to be restricted for other than cogent reasons. Unless some public interest or paramount private right renders a curtailment necessary, the owner of any character of property should have the unhampered right to sell it, with the entire world as a market. If another person, unauthorized by the owner, assists an agent in making a sale, is

it right and just to hold that, if apprised of what has been done by such assistant or subagent, and the fact that the agent has promised compensation by the owner, the latter can not accept the terms offered by the purchaser without becoming liable to such subagent? Under such circumstances, it can not be claimed that the owner has misled the subagent; nor will consummation of the sale without compensating him, place him in any worse position than he would be in if the sale should be abandoned. It is true that one can not adopt part of an unauthorized contract without adopting the whole; but the contract submitted to Mrs. Williams, and the one she adopted, was the contract for the sale of the land, and not the contract between Miller and Straub. It was not stipulated in the contract of sale that she should pay Straub for services rendered. It is true, when she adopted that contract she had knowledge of the other contract and of the services rendered by Straub, but as the latter contract was unauthorized by her, as she had done nothing to induce Straub to render the services, as her consummating the sale without remunerating him would place him in no worse position than he was already in, and as she had the power and right, independent of that contract, to sell her land to the proposed purchaser, she had the right, in the forum of conscience as well as at the bar of the law, to accept the terms of the contract of sale without ratifying the contract between Miller and Straub, either upon the ground of adoption or estoppel.

In Sheer v. Cummings, 80 Texas, 294, the evidence showed that title to the land was in John Cummings; that certain improvements were made thereon during his absence and without his knowledge or authority; that he refused to pay for them; that the plaintiff offered to refund the money paid him, and requested permission to remove the improvements from the lot, which was refused by the defendant, John Cummings. He took possession of the property, rented it, and received the money paid therefor. The case was decided in his favor, and the decision approved by the Supreme Court, which used this language in considering the question of ratification:

"The evidence shows that Jane Cummings contracted on her own account and not as agent of her son, and therefore there was no acting as his agent for him to ratify by appropriating the benefit of the contract to his own use. Even if his mother had claimed to act as his agent, but without authority, the doctrine of ratification would not apply, because his taking possession of the improvements must then have been referred to his ownership of the land."

This decision is pertinent on two points in this case. It holds that there can be no ratification of the act of an alleged agent, unless it is made to appear that such person purported to act as agent in reference to the unauthorized act; and it further shows that when ratification is sought to be established by adoption of the unauthorized act,—that is, by approval of and consent to such act,—that such adoption can not be inferred from the party doing something which he had the right to do, independent of the unauthorized transaction. So in this case, as Mrs. Williams had the right to sell her land to the Bowers, independent of

any promise Miller may have made to Straub concerning compensation to him, her act in consummating the sale should be referred to her independent right to sell, and not construed as an approval or ratification of the contract between Miller and Straub. ·

So we conclude that neither upon the ground of adoption nor estoppel can it be properly held that Mrs. Williams ratified any promise by Miller, express or implied, to compensate Straub for the services rendered by him.

It is said in appellee's brief that Mrs. Williams should be held liable because she did not promptly repudiate Miller's authority to bind her for compensation to Straub. The court made no distinct finding on that subject; but the finding that Mrs. Williams never at any time admitted her liability, tends to show the existence instead of the nonexistence of such repudiation. At any rate, failure to repudiate the act of an unauthorized person, to operate as a ratification, should embrace the essential elements of estoppel. Saveland v. Green, 40 Wis., 438. If it be conceded that Mrs. Williams did not promptly repudiate Miller's act in promising compensation to Straub, it is not shown that Straub or his assignee was injured by such failure; and for this reason one of the essential elements of estoppel by conduct is wanting. It was not made to appear that such failure prevented them from proceeding against Miller, who was liable for the debt, or that they were otherwise deprived of any right or remedy which would have then been, and is not now, available to them. It seems to us that Straub occupies no better position in this case, in his claim asserted against Mrs. Williams, than does a person who voluntarily and without solicitation pays the debt of another; and the rule is that such payment creates no liability against the original debtor. 18 Am. and Eng. Enc. of Law, 187. There is this distinction, however, between this case and a voluntary payment: generally the person who voluntarily pays the debt of another has no redress against anyone; while in this case, under the facts disclosed by the record, Straub or his assignee is entitled to redress against Miller.

The case of Graves v. Baine & Woodward, 78 Texas, 94, is not analogous to this case. We have examined the record in that case on file in the Supreme Court, and the statement of facts shows that Woodward, one of the plaintiffs, testified as follows: "Mr. Graves came into our office and a gentleman whom I afterwards knew to be Mr. Shockley, when Graves asked what was the prospect of selling the place; said he could sell to Squires for $3000. I told him not to take $3000, as we were negotiating with a party for $3500. He said, all right, go ahead. Mr. Shockley was present during the conversation, but did not say anything." It was after this that the sale was made for which the plaintiffs claimed a commission. Graves, who was a joint owner of the land with Shockley, had, without Shockley's consent, employed the plaintiffs to sell the land, and after what subsequently passed, without objection on the part of Shockley, as detailed by Woodward, the plaintiffs had a right to infer that Shockley consented to their employment, and he was

estopped from thereafter denying it. The testimony quoted above is not disclosed by the case as officially reported.

Our conclusion is that the court erred on both points of law ruled upon, and that on the findings of fact contained in the record no judgment should have been rendered against Mrs. Williams. Therefore, as between the plaintiff and Straub, the judgment will be affirmed; but as between the plaintiff and Mrs. Williams, the judgment will be set aside and judgment here rendered for her. The costs of appeal will be taxed against appellee Moore.

*Affirmed in part and reversed and rendered in part.*