BIVINS v. PANHANDLE PACKING CO.

(Court of Civil Appeals of Texas. Amarillo. Oct. 14, 1911. Rehearing Denied Nov. 11, 1911. On Second Motion for Rehearing, Dec. 8, 1911.)

1. CORPORATIONS (§ 79*)—STOCK SUBSCRIPTIONS—LIABILITY.

A promoter of a corporation proposed to a business organization of a city that, if it would cause citizens thereof to subscribe for $75,000 of the capital stock of a corporation to be formed to conduct business in the city, he would take $75,000 of the stock and establish the business in the city. The organization accepted the proposition, and appointed a committee to solicit subscriptions. The committee employed a third person to solicit, but the promoter knew nothing of his connection with the committee. The subscription contract was dated several months before the issuance of the corporate charter. Held, that the third person was not the agent of the promoter or of the corporation, but of the business organization of the city, and his representations to a subscriber were not binding on the corporation, and did not defeat a recovery by it on the subscription.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 186–193; Dec. Dig. § 79.*]

2. CORPORATIONS (§ 77*)—STOCK SUBSCRIPTIONS—LIABILITY.

Where a corporation accepts a subscription for its capital stock, and on the faith thereof expends money or incurs liability in the prosecution of the corporate enterprise, the obligation of the subscriber to pay his subscription becomes absolute.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 77.*]

3. APPEAL AND ERROR (§ 1010*)—FINDINGS—CONCLUSIVENESS.

A finding sustained by legitimate inferences deducible from the evidence is sustained by evidence, and will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010.*]

Appeal from Potter County Court; W. M. Jeter, Judge.

Action by the Panhandle Packing Company against A. W. Bivins. From a judgment for plaintiff, defendant appeals. Affirmed.

R. R. Hazlewood and J. H. Synnott, for appellant. R. E. Underwood, for appellee.

HALL, J. This action was brought upon a subscription contract signed by appellant and others, which is as follows: "The State of Texas, County of Potter. Whereas, Mr. O. W. Butts, of Kansas City, who is experienced in the business of slaughtering live stock and operating a packery, is willing to subscribe for stock and assist in establishing a packery in Amarillo, Texas, and whereas, such an enterprise would be of great benefit to the city and country generally and to the business of growing and preparing hogs and cattle for market, and of benefit to each of the subscribers hereto individually: Therefore, we, the undersigned, hereby severally subscribe for the amount of stock set opposite our respective name in a corporation to be hereafter organized and chartered under the laws of the state of Texas, for the purpose of constructing and operating a packery plant, at Amarillo, Texas, with a capital stock of one hundred and fifty thousand dollars, divided into shares of one hundred dollars each, the amount subscribed by each respectively, to be paid at Amarillo, Texas, and fifty per cent. thereof upon demand of the executive committee, composed of R. L. Stringfellow, president, J. L. Smith, secretary, W. H. Fuqua, B. T. Ware, and J. C. Paul, and the remaining fifty per cent. at such time and amounts as the board of directors of such corporation after the formation thereof may require. It is understood and agreed that such corporation may issue and offer for sale for the purpose of raising funds first mortgage bonds in an amount not exceeding one hundred thousand dollars payable on or before ten years from date and bearing seven per cent. interest per annum, secured by mortgage on the plant and machinery of such corporation.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

It is understood that the subscription hereto is not binding until the full amount of one hundred and fifty thousand dollars is subscribed, and that only fifty per cent. of each subscription must be paid before a charter can be obtained. Each subscriber further agrees that in case he makes default in the payment of this subscription, and it becomes necessary to place the same in the hands of an attorney for collection or to bring suit thereon, that he will pay ten per cent. additional upon his subscription as collection fees. Witness our respective hands, this 20th May, A. D. 1908." Opposite appellants signature was written: "Three shares $300.00." Appellant by amended answer alleged, among other things, that it was understood that the citizens of Amarillo were to subscribe $75,000 of the capital stock, and that one O. W. Butts was to take $75,000 of the capital stock, for which he was to pay with second hand machinery; that Butts was a stranger, and that the machinery was in Missouri, and had never been inspected by any Amarillo people, and that appellant subscribed for three shares on the conditions: (1) The packing plant was to be placed under management and control of a majority of directors, selected from resident citizens of Potter county. (2) A committee of either three or five competent and skilled machinists was to be selected by the committee to whom the subscription was payable, who should thoroughly examine and report on the value, quality, character, and fitness of the machinery and other property which said Butts proposed to put in against the subscription of the citizens of Potter county, which report should and would show that the property which said Butts proposed to put in was fairly worth $75,000 and was fitted and appropriate for the undertaking. (3) That no part of the amount subscribed by this defendant should be due or payable until the packing plant was in actual operation killing and preparing cattle, sheep, hogs, and other animals for market. (4) That said subscription should not be delivered to the committee, and should not become binding until said committee should execute and deliver to this defendant a memorandum in writing, showing that this defendant subscribed on the foregoing conditions.

He alleged a breach of all the conditions. Plaintiff filed a supplemental petition, in which it is alleged that, when the subscription contract was delivered to plaintiff, its directors, managers, and promoters had no knowledge of any verbal conditions or terms attached to or annexed to the agreement; that defendant never at any time until long after the institution of the suit, and about two years from the date of the subscription agreement, informed plaintiff of the conditions made at the time of the subscription; that, relying on the written contract to subscribe for shares, plaintiff had contracted heavy expenditures of money for materials and equipment for the packing plant, had incurred indebtedness for materials and equipment; that the plaintiff was dependent upon the subscriptions to meet the indebtedness against it and prayed, as in its original petition, for judgment, for amount of the debt, principal, interest, and attorney's fees. The trial was before the court without the intervention of a jury, who rendered judgment for the full amount claimed.

The court filed findings of fact and conclusions of law, the material parts of which are as follows: That the plaintiff, Panhandle Packing Company, was incorporated November 7, 1908. That its capital stock is $150,000. That between $10,000 and $11,000 of the subscriptions to stock are yet unpaid. That O. W. Butts owns $75,000 of the capital stock, fully paid in, $25,000 of which was paid in cash and the remainder in machinery at a valuation of $50,000. That the machinery had formerly been in use in a packing plant in Kansas City. That in the spring of 1908 Butts came to Amarillo, and proposed in writing to the Chamber of Commerce of Amarillo that, if they would cause to be subscribed by the citizens of Amarillo one-half of $150,000 capitalization, he would take the remaining half of the stock, and establish a packing plant, and offered to put in said machinery owned by him at $50,000. That the proposition was accepted by the Chamber of Commerce, conditioned upon the machinery being worth $50,000, and thereupon said Chamber of Commerce appointed a committee of Amarillo citizens to solicit subscriptions for said one-half of the stock which it was understood would be taken by the citizens of Amarillo, and said subscription committee selected, among others, one Joe H. Isaacs to solicit such subscriptions. That the stockholders at a regular stockholders' meeting after hearing the report of four or five parties, who were also stockholders, and who had inspected the machinery, voted to accept it at a valuation of $50,000, and that stock to that amount issue to the said Butts. That the parties who inspected the machinery were unskilled machinists. That Isaacs called on defendant several times and solicited him to subscribe for the stock, and that defendant finally signed a subscription list and wrote, "Three shares, $300.00," opposite his signature. That the subscription list recited the purposes of the enterprise, viz., that the subscriber agreed to pay the amount opposite his name, 50 per cent. on demand of the executive committee and the remaining 50 per cent. on demand of the board of directors, after the organization of the corporation. That the subscription was not to become binding until the entire amount of $150,000 was subscribed. That on default of payment of the amount subscribed, and the

same was placed in the hands of an attorney for collection, then an additional amount of 10 per cent. should be added as collection fees. That the paper signed by defendant Bivins was an absolute promise on his part to pay the sum of $300 for three shares of stock in said corporation, together with 10 per cent. additional as collection fees. That at the time defendant signed the subscription contract it was orally agreed between him and the said Isaacs that the same would not be binding on him until the packing plant had been constructed and was in operation, slaughtering stock and manufacturing packing house products. That it was not to be binding on him unless a committee of skilled machinists had inspected the machinery offered by said Butts, which committee was to be acquainted with the value of packing house machinery and reported that the same was suitable for the purposes for which it was intended and worth the price asked for it. That it was not to be binding on him unless a majority of the board of directors of said corporation were Amarillo men, and the subscription contract itself was not to be delivered by Isaacs until a written contract, signed by the proper persons, embodying the above conditions, was delivered to defendant. The court further found that none of the above oral conditions were complied with except that a majority of the board of directors of the corporation are and have been for a long time Amarillo men; that with the funds obtained from the sale of the stock the plant was erected in Amarillo and there has been installed in the plant the machinery turned over to it by the said Butts, together with other machinery; that it had been completed several months, and had not been operated on account of a lack of funds; that the corporation had about $6,000 indebtedness against it, and had no funds to pay the indebtedness, except collections from stock subscriptions, which were being collected as rapidly as possible; that the first notice that plaintiff corporation had that defendant was claiming the oral agreements mentioned in paragraph 7 had been made was about one year after plaintiff had been incorporated, and at such time the packing plant was almost completed and all expenditures contracted for, amounting to almost the entire capital stock of the corporation; that during such time efforts had been made by plaintiff to persuade defendant to pay his subscription, and that a period of about 18 months had expired before defendant began to set up his claims of a failure to comply with the conditions of the oral agreement made with Isaacs. The court concluded as a matter of law that the subscription contract signed by defendant Bivins was an absolute unconditional undertaking to pay the amount subscribed; that the authority of Joe H. Isaacs was limited to the act of procuring signatures to the subscription contract, and that he was without authority to make the oral agreement set up in defendant's answer; that the defendant by signing the subscription contract led the promoters, the corporation and other subscribers to believe his subscription to be absolute, and to act on it and to contract debts and provide for the expenditure of practically the entire capital stock, and that he was therefore estopped now to repudiate and claim that the same was subscribed upon the conditions orally agreed to between him and the said Isaacs and known only to him.

The findings and conclusions were duly excepted to, and from the judgment an appeal was taken to the Second Supreme Judicial District at Ft. Worth, and transferred by the Supreme Court to this court.

[1] Appellant's brief is predicated upon the assumption that in soliciting subscribers to stock Joe H. Isaacs was the agent of the appellee, and it seems that this is the principal question raised by the assignments, for, if this assumption be true, the rule is well established that appellee could not recover upon the subscription contract without showing performance upon its part of the three conditions last above set out. Wasson v. Clarendon College, 131 S. W. 852; Henderson v. Railway Company, 17 Tex. 560, 67 Am. Dec. 675; Wheeler & Wilson Mnfg. Co. v. Griggs (Sup.) 18 S. W. 555; Large v. Parker, 56 S. W. 587. Upon authority of the last case, delivery of the subscription contract to the subscription committee or appellee by Isaacs, without such performance, would have been unauthorized and no delivery in effect.

The court found that the Amarillo Chamber of Commerce accepted Butts' proposition, and appointed a committee of Amarillo citizens to solicit subscriptions for the half of the capital stock of the company proposed to be taken by the people of Amarillo, and that said subscription committee selected, amongst others, one Joe H. Isaacs, to solicit subscriptions to such capital stock. On this point the promoter Butts testified: "The Chamber of Commerce appointed a committee to solicit subscriptions. I knew nothing of Mr. Isaacs being connected with the committee. I do not know who went around and took subscriptions." This being the entire record upon that point, we cannot concur in the statement reiterated in appellant's brief that Isaacs was the agent of the corporation. The promoter had proposed to the Chamber of Commerce that, if the people of Amarillo would subscribe to one half of the capital stock, he would take the other half. Under such a proposal, it is plain that neither Butts nor the company ever required the services of an agent to sell stock, while, on the other hand, the Chamber of Commerce, in an effort to perform their part of the agreement,

undertook to sell $75,000 of said stock, and to that end appointed a subcommittee, who, in turn, appointed Isaacs and others to do the actual work of soliciting. The subscription contract is dated May 20, 1908, and the charter was not issued until November 7th following. If the date of the subscription contract approximates the time when appellee signed it, then Isaacs could not have been the agent of the company because no company was in existence, and the uncontroverted testimony of Butts is conclusive that Isaacs did not represent him in the transaction. We conclude from this that Isaacs was not the agent of appellee, but was acting for those interested on the opposite side of the proposition from the promoter.

[2] The only other question remaining to be considered, in order to dispose of the case, is, Did appellee accept the subscription of appellant, and upon the faith of such subscription begin work or expend any money or incur any liability in the prosecution of the enterprise? If so, then the obligation of appellee to pay immediately became absolute. White v. Crosby, 43 S. W. 532; Railway Company v. Neely, 64 Tex. 344; Williams v. Rogan, 59 Tex. 438. The ninth finding of the court is: "I find that the first notice that plaintiff corporation had that defendant was claiming the oral agreements, mentioned in paragraph 7, had been made, was about one year after plaintiff had been incorporated, and at such time the packing plant was almost completed and all the expenditures contracted for, amounting to almost all the capital stock of said corporation, and that during such time efforts had been made by plaintiff to get defendant to pay his subscription, and that a period of about 18 months time had expired before defendant began to set up his claims of a failure to comply with the oral agreement with Joe H. Isaacs, as set up in his answer." The court further found: "I find that the stockholders at a regular stockholders' meeting * * * voted to accept such machinery at 'a valuation of $50,000, and that stock to that amount issue to said O. W. Butts." The testimony of I. W. Popham fixes the date of this order to be October 9, 1908, prior to the date of the charter. Popham testified on the trial of the cause in July, 1910, that: "Some time last fall defendant told me that there were some conditions that had not been complied with." The evidence further shows that the whole amount subscribed, except about $10,000, had been collected, and that the company then had outstanding an indebtedness of about $6,000; that a president, secretary, and treasurer had been elected; and that the expense of obtaining a charter had been incurred.

[3] While the evidence is not as clear as it might have been, we cannot say that there is not sufficient testimony to support the court's findings. Under the rule that findings sustained by legitimate inferences deducible from the evidence will be held sustained by the evidence, we think these facts are sufficient to show such an acceptance of the subscription contract by appellee as to become irrevocable. Mortimore v. Affleck, 125 S. W. 51; Thigpen v. Russell, 118 S. W. 1080.

There being no error, the judgment below is affirmed.

GRAHAM, C. J., disqualified.

### On Second Motion for Rehearing.

HALL, J. A motion for rehearing has heretofore been overruled, but appellant has asked and been granted permission to file a second motion. One motion for rehearing is all he is entitled to have filed, but on account of the failure of the court to write any opinion in overruling the first motion, and in deference to the earnest and importunate manner in which appellant urges his contention, we have reviewed the entire case again. This, however, is not to be taken as a precedent, and will not be followed in other cases.

Unquestionably the authorities all sustain appellant's propositions of law that a principal cannot divide a trade made in his behalf by an agent, taking to himself its benefits and repudiating its burdens as unauthorized. Neither can a principal plead ignorance of the unauthorized acts of his agent, but is bound at his peril to inform himself, not only of the obligation, but of the rights, of the other party as stipulated between the latter and him who acted as agent. As general rules of law these are correct, but they do not apply to this case. This is a written subscription to the stock of a corporation to be thereafter organized, upon which the subscriber sought to engraft and impose oral conditions. The court below found that Isaacs was not the agent of the appellee, and we think his finding was correct. The record shows that Isaacs was appointed by and was the agent of the soliciting committee, that the soliciting committee was appointed by and was the agent of the Chamber of Commerce, and that the Chamber of Commerce was representing the citizens of Amarillo in their effort to secure the packing house. Appellee corporation had no existence at the time the subscription was made, and therefore could have no agent. Weatherford, etc., Railway v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep 837.

Notwithstanding the fact that appellant had been called upon several times to pay his subscription, he waited 18 months, until after the organization of the corporation, the expenditure of money, and the incurring of liabilities by the corporation, before ever setting up his parol conditions to the subscription as a defense. Appellant insists that the soliciting committee were the promoters of the corporation. The record does not bear this statement out, but, on the other hand, shows that O. W. Butt was the sole promoter, as that term is commonly used and understood. As such promoter he made the proposition to the people of Amarillo, through the Chamber of Commerce, and until the stock, which the citizens of Amarillo were to take, had been fully subscribed, his interest was adverse to that of the other subscribers. His proposition could not be accepted until the full amount had been subscribed. Butt testified that he knew nothing of Isaacs being connected with the committee, and no one contradicted that statement. Isaacs was working for those interested upon the other side of the proposition, and could in no sense be considered as the agent of Butt, the promoter, and certainly not of a corporation which had never come into existence. There is nothing clearer in this record than that the relation of principal and agent never existed between the company and Isaacs. At most, Isaacs was the subagent of the citizens of Amarillo, and that in the third degree.

An agent is a person appointed to act for another in the transaction of some lawful business. Williams v. Moore, 24 Tex. Civ. App. 402, 58 S. W. 953. And we think that when appellant signed his name to the subscription

list, along with other subscribers, and delivered the list to Isaacs, and instructed Isaacs not to deliver it to the subscription committee until he had a written contract from the committee, setting forth all the conditions upon which appellant had subscribed, that he constituted Isaacs his agent to make the deal accordingly, and to protect him in doing so. If the agent of the soliciting committee, whom he had adopted and made his own agent, violated his instructions, we think it would be inequitable to charge appellee with the wrong. Trammell v. Turner, 82 S. W. 325; Western Union Telegraph Company v. Edsall, 63 Tex. 669.

We see no reason for changing our former opinion in any particular, and the motions for rehearing are overruled.