**NATIONAL BANKERS LIFE INSURANCE COMPANY, Appellant,**

v.

**Z. B. FREEMAN, Sr., Appellee.**

No. 15962.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 19, 1958.

Raggio and Raggio, and Grier H. Raggio, Dallas, for appellant.

Jackson C. Burroughs, Dallas, for appellee.

MASSEY, Chief Justice.

From a judgment in behalf of plaintiff Z. B. Freeman, Sr., against defendant National Bankers Life Insurance Company for commissions on life insurance policy sales, the latter appeals.

Judgment reversed and rendered.

One Ben E. New had once been a soliciting agent for the appellant Company under one of the latter's special agents, commonly called "State agents". A State agent, at least for the appellant, usually has a contract which entitles him to 90% of the policy premium for the first year on a policy sold by him, or by a subagent under him, plus some consideration on subsequent renewal premiums. If such a person utilizes subagents he pays them. On or about February 1, 1955, Mr. New entered into a contract with the appellant Company whereby he became a "State agent". While the contract he entered into with the Company, as his principal, did not confer upon him any authority to employ subagents, the evidence in the record not only disclosed that he could do so if he so desired, but was indeed expected to do so. The only evidence in the record with reference to custom and practice relative to the payment of such subagents was from witnesses of the appellant Company, and to the effect that if an agent uses them he pays them himself. The company pays the agent the amount contracted upon, usually by way of the agent withholding his agreed commission in the first instance, and mailing to the company its "net", after deduction of such commission. This was the practice followed between the appellant Company and its agent, Ben E. New. It might be noted, however, that the appellee did not plead and in no way relies upon any custom or practice of the insurance business and does not allege whether there was one. Neither did the appellant allege any custom or practice.

Not long after the contract was entered into between the appellant Company and Mr. New the appellee entered the picture. He had been in the life insurance business for many years, primarily as an agent who solicited policies of insurance, though he had been president of a company at one time. He called upon the president of the appellant Company and indicated that he would like to sell its insurance. He indicated that he would like to become a "State agent" and inquired about the possibilities of becoming such in the State of Colorado. Obviously, no immediate hopes for such a connection were promised him. However, he was referred to Mr. Ben E. New in connection with his inquiries about employment and was informed that his application for employment should be made with or

through said agent. The appellee knew that Mr. New was a "State agent". The appellant Company's president stated to appellee that he would like to see him selling for his company and that he was sure that something could be worked out.

From the evidence in the record the appellant Company, at the time material to our consideration, wrote its insurance upon applications secured by a solicitor (regardless of what character of agent he might be called). The appellant obligated itself for the payment of compensation for such services only to its "State agents". The "State agents" were supposed to make arrangements to compensate any soliciting agent they might prevail upon to go to work for them.

The appellee did not call New. A few days later New telephoned him. Following the telephone conversation, the appellee called upon New and an oral contract was made whereby it was agreed that the appellee would receive 75% of the first year's premium on any policy written by him for the appellant Company. Nothing specific was said between New and appellee about whether it would be New who would pay appellee, or whether it would be the appellant Company. Such compensation as was paid was delivered by New to the appellee, or was withheld by appellee out of the initial premium received when the 25% (difference between the 75% appellee was to receive and the remaining 25%, which was to be "split" between New and the appellant) would be delivered to New. As a matter of fact, the appellee was taking notes for deferred payment of all or part of the first year's premium to be paid by applicants for insurance and was delivering all of said notes to Mr. New, who had an arrangement to sell the notes to a third party for cash. New was supposed to "settle up" with the appellee so that he would receive his 75% within a reasonable time after each policy was written, but apparently did not do so. As the result, the appellee never received the compensation he expected for the performance of his services. The record is clear, however, that the appellant Company never received more than 10% as to each policy written upon application secured by the appellee, so it is not to be doubted that it discharged its liability—as per its contract—with Mr. Ben E. New.

Culmination of the foregoing situation was the cancellation of such arrangement as existed between the appellee and Ben E. New. Appellee called upon the officers of the appellant Company on several occasions, expressing dissatisfaction with the trouble he was having in receiving his commissions, the promised compensation. However, it was not until after he had completely ceased to solicit insurance for the appellant Company that he made any demand for compensation upon said Company. When he did decide to make such demand, the appellant denied any liability for the payment of commissions to the appellee, insisting that such as were due, if any, were the obligation of New and not the Company.

The appellee filed suit. He sued both the appellant and New, but before entering into trial leading to the judgment before us on the appeal he dismissed New as a defendant and sought judgment against the appellant only. Trial was to a jury. The jury answered practically every special issue submitted against the appellant Company. Said Company's motion for judgment non obstante veredicto was overruled and judgment entered on the verdict against it. Hence this appeal.

Appellant's brief primarily predicates its contentions as to nonliability upon certain statements made in the case of Hicks Rubber Co. v. Columbia Tire & Rubber Co., Tex. Civ.App., Austin 1923, 252 S.W. 216, 218, writ dismissed. The case is found in the annotations under 2 Tex.Jur., p. 446, "Agency", sec. 52, "—Sales Agents—Salesmen", where, upon the authority of the case cited, it is stated: "It has been said to be a settled rule in Texas that a sales agent whose duty it is to take orders for goods within a fixed territory, and who may designate his own salesmen, cannot make a contract with a

salesman that will bind the principal to pay for his services in effecting sales."

The case of Hicks Rubber Co. v. Columbia Tire & Rubber Co., supra, was one in which the appellant sought to collect compensation in the form of a commission from the appellee on the theory that the latter, as a principal, owed the same to appellant for procuring a sale of tires for one Doyle, admittedly appellee's agent. The decision in that case might be said to rest upon the premise that the appellant failed in sustaining the burden of proof requisite to any recovery, and the appellee in the instant case strongly urges this while at the same time arguing that he had discharged the burden of proof required for support of his own judgment.

The cases which generally support the statement of law quoted are found beginning with Tynan v. Dullnig, Tex.Civ. App.1894, 25 S.W. 465, 25 S.W. 818, writ dismissed, and followed by Williams v. Moore, 1900, 24 Tex.Civ.App. 402, 58 S.W. 953; National Cash Register Co. v. Hagan & Co., 1904, 37 Tex.Civ.App. 281, 83 S.W. 727; Houston County Oil Mills & Mfg. Co. v. Bibby, 1906, 43 Tex. Civ.App. 100, 95 S.W. 562; Mitchell v. Teague, Tex.Civ.App., Beaumont 1921, 233 S.W. 1040; and Brown v. Odneal, Tex. Civ.App., El Paso 1922, 239 S.W. 350. The second of the cases cited above, Williams v. Moore, we would consider the leading authority as related to the questions posed on this appeal.

■ In the Restatement of the Law, Agency, at sec. 458, "Liability of Principal to Subagent", and sec. 459, "Liability of Agent to Subagent", we find declarations which we believe are in accord with the holdings of these cases. They are: "The authorized employment of a subagent by an agent does not subject the principal to liability to compensate the subagent for his services, nor to other contractual liability. The principal's liability to the subagent based upon quasi-contractual liability is the same as that of the principal to third persons." "An agent is subject to

liability to the subagent as his principal, in accordance with the rules stated in sections 432–469 (of the Restatement on Agency)." In the comments under section 458, we observe that the principal never becomes a party to a contract with the subagent except where by express promise or otherwise he becomes a surety for the contract made between the agent and the subagent, and that therefore he is not subject to pay to the subagent the compensation he expected to receive. However, under certain circumstances the subagent may become entitled to be subrogated to the agent's position, or be entitled to quasi-contractual relief, but in such a case it would not be a right which would be peculiar to subagents generally. See also 2 Tex.Jur., p. 608, "Agency", sec. 194, "Subagents—Liability of Principal to Subagent."

In the case of Williams v. Moore, supra, the situation was one wherein the principal's agent employed a real estate agent to sell some land belonging to the principal and said subagent did find a purchaser ready, willing and able to buy upon terms satisfactory to the principal, who executed a memorandum of agreement and delivered possession. The principal did not know that the agent had employed a subagent until after this occurrence, but did know of it at the time she delivered a deed, knowing also that the subagent was claiming of the principal the usual commission for the sale of real estate. The subagent's right to recover of the principal was found by the trial court but on appeal said judgment was reversed and rendered.

In the course of the opinion Judge Key held that where an agent employs a subagent the subagent remains such and the agent's authority is not substituted and there is no privity of contract arisen between the subagent and the agent's principal—unless: (1) from express language used in the contract between the agent and the principal the substitution power was actually conferred on the agent, or (2) from the presumption growing out of the

particular transaction, *or the usage of trade,* it may be found (as a matter of fact) that the principal intended that the power of substitution was conferred upon the agent. This was stated to be a general rule.

Judge Key further stated that whatever might be the character of the services rendered by the subagent the principal ought not to be held liable to the subagent *for compensation for such services*—unless: (1) as a part of the contract between the principal and agent the principal expressly or impliedly authorized the agent to bind him to pay the subagent's compensation, or (2) the principal has ratified by adoption a contract made between the agent and the subagent in respect to the agent's promise that the subagent's compensation would be paid by the principal, or (3) the principal has, by his own conduct and under the doctrine of estoppel, become estopped from denying that his agent had the authority to bind him to pay the subagent's compensation.

The opinion is somewhat lengthy and detailed, with examples of circumstances hypothesized in demonstration of principles of law, including those we have quoted above in this writer's own form of expression. Practically everything that is said could be readily applied to the situation posed by the case before us on appeal.

■ The evidence in the case under consideration shows that the contract entered into between the appellant and Ben E. New did not actually confer any substitution power upon New, and there is no evidence (nor is there any pleading or any finding) that from the usage of the life insurance business appellant intended that the power of substitution be conferred upon any of its general sales agents, State agents, or special agents, or upon New. Neither was there any evidence warranting the presumption that such a power was conferred under the particular transaction under and by reason of which the appellee began to solicit insurance business in behalf of the appellant Company.

Furthermore, the evidence shows that the appellant Company, the principal, did not, either expressly or impliedly, authorize New to bind it to pay the compensation of the appellee as his subagent. There is no evidence that the appellant Company ever ratified by adoption the contract made between New and the appellee, as same applies to any agreement concerning obligations or promises in respect to the payment of any compensation for services rendered by the appellee. There is no evidence of any estoppel,—in fact, the evidence demonstrates that no move was ever made by the appellant Company on any application for insurance secured by the appellee after any "notice" to appellant that the appellee "looked to" appellant Company for any compensation, nor was there any action thereafter taken by the appellee in alteration of his position.

Under these circumstances, the motion for judgment of appellant should have been granted and the judgment which was entered must be reversed and rendered.

From what has been said we have passed on the appellant's first, second, and seventh points of error and sustained the same. All other points of error, except appellant's fourth point, are overruled. The fourth point we sustain. However, if that were the only point of error sustained, the judgment of this court would be to remand the case for another trial, rather than to reverse and render the judgment below, as we have concluded proper under the other points sustained.

The fourth point goes to the form of Special Issue No. 5, reading as follows: "Do you find from a preponderance of the evidence that Ben E. New, acting on such apparent authority (i. e., making the oral contract with appellee to solicit applications for life insurance with appellant Company as an act within the scope of New's "apparent authority" as an agent for the appellant), if you have so found, would reasonably lead an ordinarily prudent person to believe that his commissions for the sale

of life insurance policies would be paid by National Bankers Life Insurance Company?"

■ We are of the opinion that the submission of the special issue, in so far as the same might be treated as an ultimate issue or as a part of ultimate issues in the case, was erroneous as to form and prejudicial even with tests applied under Texas Rules of Civil Procedure, rule 434. In view of the form of the question, the jury might have sought to arrive at its answer with the view that "an ordinarily prudent person" might be an average "man ·on the street" who had little or no acquaintance with the system under which life insurance companies seek to obtain sales of their policies. The question which should have been asked was whether the appellee was reasonably led to believe that his commissions would be paid by the appellant, or, in any event, whether "an ordinarily prudent person in the same or similar circumstances as appellee", or such a person "conversant with business usages and the nature of life insurance sales practices", would have been led into such belief. The submission of the issue therefore amounted to a "lessening" of the burden of proof incumbent upon the appellee in proving his cause of action pleaded, and correspondingly imposed a greater burden upon the appellant Company than contemplated by law. In other words, it afforded the appellee an opportunity to obtain a judgment against appellant without putting him to the necessity of pleading, proving and obtaining findings of fact in the establishment of his cause of action through the discharge of those obligations made requisite under our system of practice. That this is the case is obvious when we note that the appellee was a man of many years experience in the business of life insurance, particularly the sales practices of life insurance companies,—and when we note that appellee's attorney was successful in drawing the admission from an officer of the appellant Company that a man such as the appellee's attorney handling the trial, who knew nothing of the distinction to be made between a sales agency such as operated by Ben E. New and the sales agency such as was a part of the Company's home office operations, might not understand that there was any difference. The implication was that an ordinarily prudent person without any special knowledge of life insurance sales practices would be unable to distinguish between persons entitled to bind the Company to pay compensation for personal services and those who had no such authority.

The judgment is reversed and rendered.