RENWICK V. BANCROFT ET AL.

| 56 | 527 |
|-----|------|
| 100 | 392 |
| 56 | 527 |
| 106 | 234 |
| 56 | 527 |
| 136 | 707 |
| 56 | 527 |
| 140 | 18 |

1. **Principal and Agent**: AUTHORITY TO APPOINT SUB-AGENT. Where an agent was authorized by the owners to sell certain land, exercising his own discretion as to price and terms after an examination of the land, it was held that he might properly employ a sub-agent to find a purchaser, and that a sale made by such sub-agent was binding upon the owners.

*Appeal from Howard Circuit Court.*

TUESDAY, JUNE 21.

THIS is an action in equity, for the specific performance of an alleged verbal contract for the purchase of eighty acres of land; there was a trial upon written evidence, and a decree for the plaintiff. Defendants appeal.

*Foreman & Marsh*, for appellants.

*Barker Brothers* and *H. T. Reed*, for appellee.

ROTHROCK, J.—The land in controversy was the property of the children and heirs of John H. Cutler, deceased. It was wild and uncultivated prairie situated in Howard county in this State. The owners, being some five or six in number, were non-residents of the State. One of them, Lucy F. Whitney, with her husband, W. B. Whitney, resided in Chicago, Illinois. Some of the others, and possibly all of them, resided in the State of New Hampshire. The plaintiff claims that he made the purchase of the land through J. Barker, a real estate agent at Cresco, Iowa, for $1050, and that in pursuance of his purchase he paid the said Barker $100 in cash and made arrangements with him for $150 more to be on deposit until the conveyance should be received from the owners.

The defendants deny the authority of Barker to make the sale, and repudiate the alleged contract made by him with the

plaintiff; and here is the ultimate question upon which the case must turn, and which we are required to determine from the evidence, the appeal being here for trial anew.

Before proceeding to an examination of the merits of the case, it is proper that we should say that the action was in the first instance commenced against George Bancroft and Joseph H. Smith, executors of the will of J. H. Cutler, deceased. These parties answered disclaiming any interest in the land, and thereupon the plaintiff amended his petition making the heirs or devisees of said Cutler parties defendant. We are unable to perceive that the making of the executors parties affects any substantial right of either party, or that it should have any bearing in determining the rights of the parties in interest. If the real parties defendant, who are conceded to be the heirs of Cutler, are not bound by the contract made by the plaintiff with Barker, that is an end of the controversy, and there must be a decree dismissing the plaintiff's petition.

We will proceed to axamine the rights of the parties with reference to the alleged contract. As has been stated one of said heirs, the wife of W. B. Whitney, resided in Chicago, Illinois. The evidence shows that said W. B. Whitney called upon said Barker at his office in Cresco about the 22 of May, 1878, and stated to Barker that at the request of the administrators and heirs of the Cutler estate he came out to look over the land, with authority to sell or dispose of it in any way that in his judgment might seem best. He stated that he had been to see the land, and that he considered it worth $12.50 per acre, and asked Barker if he could sell it for that. Barker replied that he could. Whitney thereupon authorized Barker to sell the land at that price; said he would want at least $100 in cash, and that if Barker could get $150 or $200 in cash to do so; that they wanted to sell to a good party and enough cash to secure the sale, and that the purchaser could have all the time he wanted on deferred payments up to ten years by paying ten per cent on the deferred payments

and improving the land;· that if any man would deposit $100 with Barker on a purchase he could at once take possession and go to breaking, and the money could remain in Barker's hands until the necessary deeds and papers were for-· warded. As to the commission to Barker, Whitney said he (Barker) could add $50 to price of land; that the owners could not pay any commission out of the price they were asking for the land. These facts were testified to by said Barker and by W. B. Barker, and they were not contradicted by any witness. Whitney was not examined as a witness in the case.

The evidence further shows that on the forenoon of the 27th of May 1878, Barker made a verbal contract with the plaintiff for the sale of the land for $1050. Plaintiff paid to Barker $100 in cash and made arrangements with Barker to advance for him $150 more if the deed should be received from defendants before he could raise that amount, and plaintiff was to pay $100 November 1879, and $200 a year thereafter until all was paid, with interest at ten per cent. Plaintiff took possession under this contract and broke from fourteen to sixteen acres of prairie.

These facts being established by the evidence beyond all question, it follows that if Whitney was authorized by the owners of the land to make a sale, using his judgment as to value and terms of payment, and if he was further authorized to make the sale through Barker, the defendants are bound thereby. The contract was not within the statute of frauds if the payment of the $100 was authorized, because there was not only payment of part of the purchase money, but possession of the land was taken by the purchaser.

II. We will next inquire as to the authority of Whitney to make the sale. Of course the declaration of Whitney to the effect that he was authorized to make the sale amounts to nothing. The authority of an agent cannot be shown by the declarations of the agent. But the plaintiff took the testi-

mony of two of the defendants and heirs. One of them, Sallie A. Terry, testified that she had an arrangement with Whitney to sell her interest in the land; that it was not in writing but made verbally with Wm. P. Cutler; that she instructed Cutler to write Whitney for this purpose, and that her impression was that Whitney was not required to submit propositions or agreements to her for her approval before sale could be completed. This witness also stated that she had never employed Barker to make a sale and that Whitney never advised her that he had employed Barker. Wm. P. Cutler testified that he never employed Barker nor authorized Whitney to employ him to sell the land. The witness further testified as follows:

"I appointed him to do it personally, but not to appoint an agent. I employed Whitney to make a sale of my interest. He was requested and authorized by me and the other heirs, as he was nearest to the land, to go down and look at it and see what he could sell it for, and to make a sale if he thought best. It was left to his judgment to sell or not to sell. We requested him to use his own judgment in the matter; if he found the price satisfactory to go on and sell it. He had authority to sell the land without submitting contract for sale to me. I have executed deed of my interest in the land since May 27, 1878, to a Mr. Cray. The same was done without any knowledge or information of any contract between plaintiff and Jeremiah Barker for sale and purchase of it."

Here, then, we have the evidence that the owners authorized Whitney to make the sale if he thought best to do so. He was to use his own judgment in the matter. There is no evidence in the case contradictory to that last above cited. The other defendants were not examined as witnesses. Counsel do not in argument question Whitney's authority to sell the land on credit, as to part of the purchase money. We presume it is conceded that the usage of trade would authorize an agent to extend

1. PRINCIPAL and agent: authority to appoint sub-agent.

credit although not specifically empowered to do so. Parsons on Contracts, Vol. 1, p. 58.

It is insisted that if it be conceded Whitney had authority to make the sale he had no authority to delegate his agency to Barker. That this is a general rule must be conceded. But the evidence in this case does not show that Whitney invested Barker with any discretion as to the price at which the land should be sold. Whitney examined the land and put a price upon it upon his own judgment, and the sale made by Barker was in substantial compliance with the terms fixed by Whitney. Whitney was not precluded by his agency from employing whom he thought proper to aid him in finding a purchaser. Barker was but the instrument through whom Whitney carried out his agency. The defendants are not required to trust the honesty of Barker in paying over the cash payment in his hands. It is not sought by the plaintiff to compel a conveyance without the payment of the money to the defendants. It is said that Barker was to sell to a "good man," and that there is no evidence that the plaintiff is entitled to that appellation. In the absence of evidence upon that question it should be presumed that the plaintiff is solvent and responsible for his contracts.

III. It appears that after the sale by Barker to the plaintiff one Stradley, who was also authorized by Whitney to find a purchaser for the land, made a sale to one Cray for $1200 and the defendants have made a conveyance to Cray. By an amendment to the petition Cray was made a party defendant, and it was charged that he purchased with notice of the prior purchase of the plaintiff. This Cray denies. A careful examination of the evidence satisfies us that Cray purchased with full knowledge of the plaintiff's contract. We need not set out the evidence upon this question. A mere statement of it would demonstrate the correctness of our conclusion. We have not entered into a discussion in answer to all the arguments of counsel. The foregoing views, we think, dispose of every material question in the case. This contro-

versy may be justly termed a scramble between the plaintiff and Cray to obtain the land in controversy. There is nothing in the case warranting the belief that the defendants would have questioned the contract made by the plaintiff if it had not been that they were offered $150 more by Cray.

IV. The decree provides "that plaintiff shall have a conveyance of the land upon his executing his promissory notes properly secured to the defendants for the balance of the amount agreed upon between plaintiff and defendants on May 27, 1878, to-wit, $800 as follows: $100 in one year from date of conveyance to plaintiff; $200 in two years; $200 in three years and $300 in four years after date of conveyance, with annual interest at the rate of ten per cent per annum; time being computed from date of conveyance." This decree should be modified as follows. The plaintiff should be required to pay the $200 cash payment before conveyance and the deferred payments should be secured by mortgage on the land. And as the defendants obtain by this modification a more favorable decree than that appealed from, appellee will be taxed with the costs of the appeal.

MODIFIED AND AFFIRMED.