## Arthur D. Addison, Appellant, v. John Wanamaker.

*Principal and agent—Real estate broker—Commissions—Contract.*

It is against public policy and sound morality for a man to act as broker for both vendor and vendee, unless that fact is fully communicated to the parties.

In an action by a real estate broker to recover commissions for the sale of real estate, the plaintiff is not entitled to recover where the evidence shows that the plaintiff had a client or customer who wished to buy property similar to that of the defendant; that plaintiff finally arranged through defendant's agent satisfactory terms of purchase for his customer; that the property was subsequently conveyed accordingly, but there was no evidence that the plaintiff was ever authorized by the defendant to represent him in the transaction.

*Custom—Real estate broker—Commissions.*

A custom that, irrespective of any contractual relation whatever between a broker and a vendor, the latter is liable to pay the commissions to the

former for the sale of real estate, is a viciously bad custom, and the vendor will not be held liable unless it has been previously made the subject of agreement between all the parties concerned—the vendor, the vendee and the broker.

Argued April 6, 1898. Appeal, No. 73, Jan. T., 1898, by plaintiff, from order of C. P. No. 2, Phila. Co., Sept. T., 1895, No. 588, dismissing exceptions to report of referee. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to report of referee, J. Hampton Barnes, Esq.

The referee reported as follows :

Prior to February 3, 1893, the plaintiff, Arthur D. Addison, a real estate broker, licensed to do business in the city of Washington, D. C., called upon the defendant, John Wanamaker, the owner of a residence building at No. 1731 I street Northwest, Washington, D. C., and inquired if the said residence was for sale, and solicited the right to sell it as defendant's agent. At this interview the defendant told the plaintiff that he had not determined to sell the house, although circumstances might occur which would induce him to sell; that he would not put the house in the market for sale; that under no circumstances would he put the house in the hands of any agent to sell, nor would he employ any agent to sell it, and that if he did sell it, he would deal with the principal.

This was the only interview between the plaintiff and the defendant upon the subject.

Upon February 3, 1893, the plaintiff wrote the defendant as follows :

"Some weeks ago I called on you to ask if you would sell your house on I street and was informed that you had not decided what you would do with it. If you have decided to sell or rent, I would be glad to hear from you as I know of two parties who are anxious to purchase large houses in this city, and yours might suit one of them. An early reply is requested."

To which letter the defendant on February 6, 1893, replied as follows:

"Answering your letter of February 3d, asking whether my house is for sale, I beg to say that I have determined not to

put it upon the market, and have no price for it. I am willing to entertain a reasonable offer from a bona fide satisfactory purchaser."

Upon February 11, 1893, the plaintiff wrote the defendant as follows :

" Your favor of the 6th inst. duly received. One of my clients, Bishop Hurst, has purchased a house, but the other one referred to, Mr. Howland of New York, is anxious to inspect your property on Wednesday next if you will grant permission. If you will allow me to show your property on Wednesday, please be good enough to name the hour and oblige."

To which the defendant replied, on February 13, 1893, as follows :

" Answering your note of the 11th, received today, saying that you would like to have permission to show my house to a Mr. Howland, and asking for a time, I beg to say that, without putting my house into your hands to sell, I am quite willing that you should show it to your friend on Wednesday afternoon at three o'clock."

After the receipt of the last letter the plaintiff showed the house to Mr. S. S. Howland, and on February 27, 1893, wrote the defendant as follows :

" I have been requested by Mr. Howland to ask you to put a price on your residence in this city, and also to ask if you would sell your gallery with the house. An early answer will greatly oblige."

To which the defendant replied, on March 2, 1893, as follows :

" Answering your letter of February 27th ; I am not disposed to· sell my pictures, and I do not wish to put my house in the market; though I should entertain the offer of a reasonable price for it."

The defendant left Washington a few days after March 2, 1893, having had no other communication with the plaintiff between the said second day of March, 1893, and the time of his departure.

Prior to his departure he placed his said house in charge of A. D. Hazen, a friend and associate in the department of the United States government of which the defendant had been the head until March 4, 1893, and gave to him authority to sell

the said house at the price of $90,000. Subsequent to March 2, 1893, the plaintiff obtained from Mr. Howland an offer for the defendant's house. He communicated the offer by a telegram to the defendant who was in Mexico. The defendant telegraphed Mr. Hazen that the plaintiff had submitted an offer, and in consequence of this communication the plaintiff had an interview with Mr. Hazen in regard to it. The offer was refused, a second offer was made and refused, and finally an offer of $90,000 made by Mr. Howland, was submitted by the plaintiff and accepted by Mr. Hazen, acting for the defendant. When the first and second offers were made the plaintiff desired that they should be submitted to the defendant, but Mr. Hazen said it was useless to do so, as he was bound by his instructions to accept no sum less than $90,000. When the offer of $90,000 was made and before it was accepted the plaintiff said to Mr. Hazen that, of course, he would expect the usual commission of two and one half per cent, and asked him to notify the defendant to that effect. Mr. Hazen replied that he had no authority to discuss the question of commission, and that it would have to be settled with Mr. Wanamaker. Mr. Hazen did not communicate the plaintiff's demand for commission to the defendant. The offer of $90,000 having been accepted, the terms of settlement were agreed upon, and the sum of $5,000 was paid on April 15, 1893, on account of the consideration, by a check of the purchaser, Mr. Howland, to the order of the defendant, and delivered to Mr. Nevin, a representative of the defendant, at a meeting at the plaintiff's office in Washington, at which there were present, the plaintiff, Mr. Nevin, Mr. Howland and Mr. Hazen. Subsequently, the plaintiff ordered a title policy of insurance upon the property, and caused the deed to be prepared, and upon May 8, 1893, inquired of Mr. Nevin by letter, at what time the defendant would sign the deed, and on May 12, 1893, wrote Mr. Nevin as follows:

"Your favor of the 9th inst. duly received. I have the deed and will send it to you in a few days. Of course Mr. Wanamaker knows that he will owe me $2\frac{1}{2}$ % commission for making the sale, as I notified his friend, Genl. Hazen, to that effect when the offer was first made."

To which Mr. Nevin replied on May 13, 1893, as follows:

"I am in receipt of your favor of the 12th inst. and whenever

you are ready to forward the deed, it can be sent to me and I will see that it is executed. Regarding the question of commissions, I have nothing to do with this part of the transaction and therefore do not know anything about it."

On May 20, 1893, the plaintiff wrote Mr. Nevin as follows :

" Inclosed please find deed from Mr. and Mrs. Wanamaker to Mr. S. S. Howland, which please be kind enough to have executed. If Mr. Wanamaker is willing to have me make the transfer for him I can receive certified check and give the deed to Mr. Howland, which I always do in making a sale. It is usual, first to deduct the commission, but if Mr. Wanamaker prefers sending me his check for the amount, $2,250, I will send the $35,000 check to him."

Mr. Nevin did not communicate the contents of this letter to the defendant prior to the settlement and delivery of the deed. The deed was delivered on May 29, 1893, at Washington, and the balance of the cash payment of purchase money paid by check of Mr. Howland to order of the defendant, delivered to Mr. Nevin, and on that day, May 29, 1893, the plaintiff wrote a letter to the defendant demanding the payment of his commission of two and one half per cent, to which, on June 2, 1893, the defendant replied by letter denying any liability to him for a commission.

It was conceded by the plaintiff that there was no express contract made with him by the defendant to negotiate for a sale of his house, nor any express agreement to pay him a commission for the sale. The evidence showed that two and one half per cent is the usual commission for sale such as in this case, and that it is the usual custom for the seller to pay the commission for a sale by a broker.

The plaintiff contends that the correspondence above set out and the subsequent negotiations and sale of the house, constitute an implied contract to pay him the usual commission, and that the acceptance of Mr. Howland's offer and the subsequent acts of the plaintiff to the close of the transaction constituted a ratification of the plaintiff's agency for the defendant.

It is clear that a contract to pay a broker a commission for a sale may be implied from the circumstances of the case, and that such a contract may be created by acceptance of services rendered : Mechem on Agency, sec. 937 ; Fenn v. Dickey, 178

Pa. 258; Sibbald v. Bethlehem Iron Co., 83 N. Y. Rep. 378. But an employment of the agent must be affirmatively established by such an implied contract or a conscious ratification : Keys v. Johnson, 68 Pa. 42 ; Twelfth St. Market Co. v. Jackson, 102 Pa. 269 ; Zoebisch v. Rauch, 133 Pa. 532.

It is clear in this case that the defendant refused at the interview between them to allow the plaintiff to sell the house. When the plaintiff had obtained the consent of Mr. Howland to examine the house, he then wrote to the defendant for permission to show it to him ; the defendant then gave that permission in his letter of February 13, 1893, above quoted in full, but carefully limited and restricted the right given the plaintiff or which might be implied from that permission by saying " without putting my house into your hands to sell I am willing you should show it." No contract to employ the plaintiff can be implied from this, the initial step in the relations of the parties, in respect to the sale ; upon the contrary it is an express negation of any such implication, and was a reiteration upon the request then presented of the general statement made at the interview between the parties that the defendant would not sell through an agent. Nothing, in the opinion of the referee, occurred in the subsequent relations between the plaintiff and the defendant to alter the status established by the interview between the parties and by this letter. No contract can, therefore, be implied from the facts succeeding the letter containing the above statement, in contradiction of its express terms, nor can the defendant be held to be bound to the plaintiff upon any principle of ratification of acts which had their inception in an express refusal of the right to perform for the defendant that which the plaintiff did, in spite of such refusal.

The referee is, therefore, of the opinion that the plaintiff has failed to establish any undertaking upon the part of the defendant to pay him the commissions demanded, and that judgment should be entered for the defendant.

Exceptions filed to the referee's report were dismissed by the court, and the report confirmed.

*Error assigned* was in dismissing exceptions to report of referee.

*Joseph K. McCammon* and *James H. Hayden,* for appellant.— Addison's right to compensation for his services was contingent upon his getting an offer which Wanamaker should accept, and succeeding in closing the sale upon the terms of that offer: Ellis v. Dunsworth, 49 Ill. App. 187; Fitch on Real Estate Agency, 17; Jones v. Adler, 34 Md. 440; Lincoln v. McClatchie, 36 Conn. 136; Stewart v. Mather, 32 Wis. 344.

We submit that a contract is to be implied from the correspondence: Ellis v. Dunsworth, 49 Ill. App. 187; Fitch on Real Est. Agency, p. 15; Sussdorff v. Schmidt, 55 N. Y. 319.

The leading case in the District of Columbia on the subject of commissions and contracts of agency in connection with sales of real estate is that of Bryan v. Abert, 3 App. Cas. 180. Inasmuch as this case contains the pertinent law of the place where the transaction now in question occurred, it should be regarded as the controlling authority. See also Sibbald v. Bethlehem Iron Co., 83 N. Y. 378; Greeves v. McAllister, 2 Binney, 591.

A promise to pay is implied from the acceptance of services manifestly of a beneficial nature: Livingston v. Rogers, 1 Caines, 583; Cincinnati, etc., Co. v. Western, etc., Co., 152 U. S. 200.

There is a trade custom in the District of Columbia pursuant to which the vendor of real estate is obliged to pay the commissions of the broker who negotiates the sale. It must be considered that Addison and Wanamaker had this custom in mind, and that their dealings were governed by it: Pittsburg v. O'Neill, 1 Pa. 342; Dyer v. Sutherland, 75 Ill. 583; 1 Beach on the Modern Law of Contracts, sec. 768: Pollock on Contracts, 15; Leake on Contracts, 38.

*P. F. Rothermel, Jr.,* for appellee.—The mere fact that one party reaps a benefit from the act of another does not make him liable to pay for it. The act may not have been done at his instance or for his benefit, but at the instance or for the benefit of another, or he may have expressly declared that if the act was done he would not pay for it: Pierce v. Thomas, 4 E. D. Smith's Rep. (N. Y.) 354.

The theory upon which usages are admitted in any case is that the parties knew and intended the usage should enter into the contract: McDowell v. Ingersoll, 5 S. & R. 101; Whitesell v. Crane, 8 W. & S. 369; McMasters v. R. R., 69 Pa. 374;

Bank v. Woodward, 18 Pa. 357; Pierce v. Thomas, 4 E. D. Smith's Rep. 354; Atwater v. Lockwood, 39 Conn. 49.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 18, 1898:

This action of assumpsit was brought to recover $2,250 commissions at the rate of two and one half per cent on $90,000, the price for which defendant's former residence in Washington city was sold in 1893. Plaintiff averred in substance that, acting for the defendant as his real estate broker, he effected the sale and thereby earned the commissions claimed. The defendant, on the other hand, denied that he ever employed plaintiff to sell the property or procure a purchaser therefor, and also denied that he owed him the sum claimed or any sum whatever. It was, of course, incumbent on the plaintiff to prove a contract, express or implied, with the defendant. In that he signally failed. The evidence tended strongly to prove that he had two clients or customers, each of whom wished to buy property similar in grade, etc., to that of the defendant. For one of these he finally arranged, through defendant's agent, satisfactory terms of purchase, and the property was subsequently conveyed accordingly; but there is not a particle of evidence that the plaintiff was ever authorized by the defendant to represent him in the transaction. On the contrary, the defendant appears to have been studiously careful to avoid saying or doing anything from which any inference of employment as his agent for any purpose, might be drawn. The plaintiff's suggestion, that irrespective of any contractual relation, whatever, between the broker and the vendor, it is customary for the latter to pay the commissions of the former, and therefore he is entitled to recover, cannot be entertained. No such viciously bad custom as that should ever be recognized, unless it has been previously made the subject of agreement between all the parties concerned —vendor, vendee and the broker. The plaintiff in this case was manifestly the employee of the person who afterwards became purchaser of the property, and hence he was not in a position to properly act as agent of the defendant. That "no man can serve two masters" is a sound proposition resting on the highest and best authority. Any alleged agency that is in conflict with this principle must rest on express contract between the parties in interest. As was said in Cannell v. Smith, 142

Pa. 25, "it is against public policy and sound morality for a man to act as broker for both parties, unless that fact is fully communicated to them." To the same effect are Everhart v. Searle, 71 Pa. 256; Rice v. Davis, 136 Pa. 439.

Without further reference to the facts or the principles involved, we are all of opinion that the learned referee was clearly right, on the evidence before him, in concluding "that the plaintiff has failed to establish any undertaking upon the part of the defendant to pay him the commissions demanded, and that judgment should be entered for the defendant."

Judgment affirmed.