## SHAW et ux. v. O'BYRNE et al.

No. 4131.   Decided August 12, 1924.   (228 Pac. 570.)

1. APPEAL AND ERROR—REFUSAL TO STRIKE OUT IMPROPERLY VERI-
   FIED COMPLAINT NOT REVERSIBLE ERROR. Where, if amended complaint for specific performance had been stricken for defective verification, plaintiffs would have had a right to correct it and refile it at once, error, if any, in refusing to strike it did not constitute cause for reversal, defendants not being prejudiced.

2. APPEAL AND ERROR—JUDGMENT NOT REVERSED FOR TECHNICAL ERROR. Judgments cannot be reversed for mere technical errors.

3. BROKERS—OWNER OF LAND BOUND BY CONTRACT OF SALE ENTERED INTO BY ASSOCIATE OF REAL ESTATE AGENT. Where the owner of land put her property in the hands of a real estate agent to sell, and knew that he conducted his business with an associate, who contracted to sell the property, and from whom she accepted a part of the purchase price, she was bound by the contract so negotiated.

4. BROKERS—AGENT MAY DELEGATE TO SUB-AGENT AUTHORITY TO SELL REAL ESTATE. Although, as a general rule, if an agent appointed must exercise special skill, judgment, or discretion, or must possess special qualifications and fitness to perform a duty, he cannot delegate his authority to another, an agent to sell real estate may employ a subagent to perform his duties.

5. APPEAL AND ERROR—ERROR, IF ANY, IN REJECTING EVIDENCE THAT WOULD NOT HAVE CHANGED RESULT, HELD HARMLESS. In a suit for specific performance, where defendant placed her land in the hands of a real estate agent to sell, error, if any, in excluding evidence offered by defendant respecting the agency which would not have changed the result, was harmless.

6. APPEAL AND ERROR—ERRONEOUS CONCLUSION OF TRIAL COURT, FOUNDED ON UNDISPUTED EVIDENCE, DISREGARDED, IN VIEW OF CORRECT JUDGMENT. In a suit for specific performance of a contract to sell land, the fact that the court, from undisputed evidence, arrived at a wrong conclusion as to the right of a real estate agent to delegate his authority to sell, in view of a proper judgment clearly supported by evidence, is immaterial, and may be disregarded.

7. APPEAL AND ERROR—FILING AMENDED COMPLAINT, FOR WHICH THERE WAS NO NECESSITY, HELD IMMATERIAL. In a suit for specific performance of a contract to sell land, where there was no necessity for filing an amended complaint, the action of the court in requiring an amended complaint conforming to the facts to be filed after decree for plaintiff was not injurious to any one, and an assignment of error founded thereon is immaterial.

8. BROKERS—RETAINING AS AGENT'S COMMISSION MONEY RECEIVED FOR LAND ABOVE OWNER'S PRICE HELD PROPER. Where a property owner put land in the hands of a real estate agent for sale, and set the net price at $2,250, and refused to pay commission, after selling the property for $2,500, $500 of which

was paid down, the agent's retention of $250 as commission was proper.

9. SPECIFIC PERFORMANCE—DECREE FAILING TO MAKE DISPOSITION OF CASH PAID OWNER ON SALE OF LAND HELD PROPER. In suit for specific performance of contract to sell land, which owner put in hands of real estate agent for sale for $2,250, but which the agent sold for $2,500, $500 of which was paid down, and $250 of which was paid to the owner, failure of decree to make final disposition of the $250 received by the owner, which she refused to retain, was not error.

Appeal from District Court, Second District, Weber County; *J. N. Kimball*, Judge.

Suit by Ernest Shaw and wife against Olive Theresa Shaw O'Byrne and others. From a decree for plaintiffs, certain defendants appeal.

AFFIRMED.

*L. J. Holther* and *C. R. Hollingsworth*, both of Ogden, for appellants.

*Pratt & Pratt*, of Ogden, for respondents.

See 4 C. J. §§ 2557, 2897, 2913, 2920, 2986; 9 C. J. §§ 21 (1926 Anno), 135, 143; 36 Cyc. p. 789.

FRICK, J.

Ernest and Grace Shaw, husband and wife, hereinafter called respondents, commenced this action in the district court of Weber county, Utah, against Olive Theresa Shaw O'Byrne, also known as T. S. O'Byrne, hereinafter called Mrs. O'Byrne, and Theodore Gajewsky, for specific performance of a certain agreement by the terms of which, respondents alleged in their complaint, Mrs. O'Byrne had agreed to sell and convey to respondents certain real property in Ogden, Utah. There were other defendants to the action, but, in view that

they were not served with process, they will not be further noticed as parties.

Gajewsky was made a party defendant upon the ground that subsequent to the alleged agreement of Mrs. O'Byrne to sell to respondents she sold and conveyed the property to Gajewsky. Respondents, however, alleged and proved that Gajewsky had full knowledge of the agreement of Mrs. O'Byrne with them, and the court found against Gajewsky. In view that we shall set forth the original agreement to sell, as well as the other written documents which constitute the basis of this action, and the court's decision, we shall merely refer to the pleadings when necessary in the course of the opinion.

On April 22, 1922, Mrs. O'Byrne signed and delivered the following agreement, to wit:

"M. Skeen Realty Company, Ogden, Utah.

"You are hereby given exclusive authority to sell for me the following described real property: 260 ft. on 12th street by 385.44 feet deep, containing 2.3 acres, situated in the northeast ¼ of section 20, township 6 north, range 1 west, Salt Lake meridian, U. S. survey, together with all water rights belonging to said property.

"Furnish abstract and warranty deed free incumbrances at any time within 60 days from the date hereof at the price of $2,250 net cash on the terms of $———— cash, balance ————, and you are hereby authorized to accept of deposit and execute binding contract of sale on my behalf on making sale within the time above specified and on the terms above named.

"My title to said premises is perfect, and they are free from all manner of incumbrance, save only ————, which is to ————.

"Right is reserved to withdraw the above-described property from market, prior to a sale being concluded, on giving 30 days' written notice, but not so as to affect the sale then pending and in process of negotiation, except on the terms of the payment of the full commission agreed to be paid on a sale.

"As a consideration for my agent's services I promise and agree to pay to him a ———— per cent. commission in case said lands are sold.

"(Signed)    Mrs. T. S. O'Byrne, Owner."

The M. Skeen Realty Company, named in the foregoing agreement, was composed of M. Skeen, or Moroni Skeen, who carried on business in the name and style of M. Skeen Realty

Company.  On the same day J. H. Skeen, a brother of Moroni Skeen, and who worked in the office-of the M. Skeen Realty Company, issued and delivered to the respondents Grace Shaw the following document:.

"Received from Mrs. Grace Shaw the sum of $500 as an advance payment on purchase price of 260 feet of property on 12th street, Ogden, Utah, by 385.44 feet deep, more or less, running north.  Said property is situated in the northeast quarter of section 20, township 6 north, range 1 west, Salt Lake meridian.  Purchase price being $2,500.  Balance due is $2,000, which is to be paid on or before 30 days from this date.  Said property is to be delivered free of incumbrance, with abstract of title and warranty deed also, together with all water rights pertaining to said property.

"(Signed)   J. H. Skeen."

On the 24th day of April following, Mrs. O'Byrne signed and delivered to J. H. Skeen the following receipt:

"Received from J. H. Skeen the sum of $250 advance payment on 260 feet on 12th street by 385.44 feet deep; balance due, $2,000, to be paid on or before 30 days from date; property to be delivered free of incumbrance with warranty deed.

'(Signed)   Mrs. T. S. O'Byrne."

It should be stated in explanation here that on the morning of the day on which the foregoing receipt bears date Moroni Skeen had called on Mrs. O'Byrne and had offered to pay to her by check the $250 mentioned in the receipt, but she then said that she had not fully made up her mind whether she would sell or not, and that she wanted to think the matter over further.  Later in the day she discussed the matter with her mother, and then called up the office of M. Skeen Realty Company and asked for M. Skeen.  M. Skeen, it seems, was not at the office, and J. H. Skeen answered her call.  She informed J. H. Skeen over the phone that she was ready to close the deal and accept the check for the initial payment.  J. H. Skeen immediately went to see Mrs. O'Byrne at her home, and instead of delivering her the M. Skeen check tendered to her in the morning by M. Skeen, he gave her his personal check for the $250, which she received.  It should be further stated that Mrs. O'Byrne was well acquainted with both of the Skeen brothers, and had been in the office of the M. Skeen Realty Company, and

knew that both of them were working in the office. It was
further made to appear that at the time J. H. Skeen de-
livered the check for the $250 he presented Mrs. O'Byrne a
warranty deed, in which the property in question was fully
described, and in which the purchase price respondents
agreed to pay for the property and the grantee were left
blank. With regard to that matter J. H. Skeen testified:

"Mrs. O'Byrne said, 'Well, who is buying the property?' I
says, 'Does that make any difference to you?' She says, 'Not a
bit; I have got my price; I am satisfied, and my mother says it
is all right, and that's all there is to it.'"

A Mr. Kennedy, who was present with J. H. Skeen as a
notary public, and who took the acknowledgment of Mrs.
O'Byrne to the deed aforesaid, corroborates Mr. J. H. Skeen
in his statement of what was said concerning the matter.
There is also more evidence to the same effect. J. H. Skeen
took the deed with him, with the understanding that he was
to fill in the blanks later and to hold the same until the full
purchase price was paid by the respondents, but in view that
Mrs. O'Byrne subsequently refused to receive the purchase
price, and repudiated the deal, and conveyed the property to
Gajewsky, the blanks were never filled in the deed, nor was the
deed ever delivered. J. H. Skeen explained the blank re-
specting the grantee by stating that at that time he did
not know whether the deed should run to Ernest or to Grace
Shaw. The deed, as executed by Mrs. O'Byrne, was, how-
ever, admitted in evidence by the court for the purpose of
identifying the property in question.

It should also be stated here that, within a few days after
Mrs. O'Byrne had refused to complete the sale, to wit, on
May 9, 1922, she commenced an action by filing a com-
plaint against Moroni and J. H. Skeen, both as individuals
and as copartners, and also against the M. Skeen Realty
Company, in which complaint she described the property
in question, and by which action she sought to cancel the
documents hereinbefore referred to. She, however, also al-
leged that J. H. Skeen obtained the receipt from her and
did all that he did in the matter "pursuant to said authori-
zation theretofore given by plaintiff," Mrs. O'Byrne, re-

ferring to the agreement given by her to the M. Skeen Realty Company, and which we have hereinbefore set forth. There are further admissions by Mrs. O'Byrne that she knowingly and intentionally entered into the agreement with both the M. Skeen Realty Company and with J. H. Skeen, and that the only excuse she had for repudiating the deal was that she did not want to sell the property to the respondents, who were related to her. In view, however, that she had failed to prove that she had informed either Moroni Skeen or J. H. Skeen of her objection, the district court properly disregarded her objection.

The court found in favor of respondents, and entered judgment decreeing specific performance of the agreement, and both Mrs. O'Byrne and Gajewsky appeal.

The assignments of error that are argued in counsel's brief are as follows: (1) That the court erred in refusing to strike respondents' amended complaint; (2) that the court erred in denying the motion for nonsuit; (3) that the court erred in excluding certain evidence offered by Mrs. O'Byrne; (4) that the court erred because it granted specific performance of an agreement different from the one alleged in respondents' complaint; (5) [this assignment, for the reasons appearing in the opinion, is immaterial] ; (6) the court erred in failing to "make disposition of the $250 in the hands of J. H. Skeen," referring to the $250 that J. H. Skeen had paid to Mrs. O'Byrne, and which she returned to him.

The whole difficulty in this case arises by reason of the fact that at the trial the district court took the position that, in view that authority to sell the real estate was given to M. Skeen Realty Company, by which name Moroni Skeen transacted business, and that J. H. Skeen had conducted the negotiations between the respondents and Mrs. O'Byrne in his own name, therefore J. H. Skeen was not the authorized agent of Mrs. O'Byrne, but was the agent of respondents. The court, however, held that, regardless of that fact, under the evidence, Mrs. O'Byrne was nevertheless bound, and that Gajewsky, having had full knowledge of respondents' rights in the premises, was not an innocent purchaser. Notwith-

standing the fact, therefore, that J. H. Skeen was held not
to be the authorized agent of Mrs. O'Byrne, the court never-
theless found that respondents were entitled to specific per-
formance, as before stated.

The record shows that during the trial, in answer to re-
spondents' counsel, the court said:

"One man appointed as an agent can't delegate authority to an-
other agent. I think that is the authority, and that is the law."

That statement was in different ways repeated by the
court at various stages of the trial. We shall now proceed
to a consideration of appellants' assignments of error.

It is first insisted that the court erred in refusing to strike
respondents' amended complaint from the files upon the
ground that it was improperly verified. Conceding that the
court technically erred in refusing to strike the amended
complant, yet there is nothing made to appear wherein
the appellants, or either of them, are in any way          1,2
prejudiced in any substantial right by the court's rul-
ing. Had the court stricken the complaint, respondents
would have had the right to correct the defective verification
and to instanter refile the complaint. Not to have permitted
that, under the circumstances disclosed by the record, would
have constituted error. We cannot reverse judgments for
mere technical errors, and hence this assignment must fail.

It is next insisted that the court erred in not sustaining
appellants' motion for nonsuit, upon the ground that re-
spondents had failed "to show any authorization and agency
of J. H. Skeen from defendant" Mrs. O'Byrne. The mo-
tion was based upon the court's expressed views during the
trial that, in appointing M. Skeen Realty Company as agent,
in view that M. Skeen constituted the realty company, it
was M. Skeen that Mrs. O'Byrne had appointed her agent,
and that M. Skeen was powerless to delegate his authority
to sell to J. H. Skeen, who negotiated the sale between Mrs.
O'Byrne and the respondents. In taking this somewhat
narrow view of the relationship of the different parties in
the transactions involved here, we think the court erred. It
is true that the general rule is to the effect that, if an agent is

appointed by A., and the person appointed must exercise special skill, judgment, or discretion, or must possess special qualifications and fitness to discharge the duties imposed, then the agent that is appointed cannot delegate his authority to another. In selecting the particular person A. may have relied upon the special fitness, skill, judgment, and discretion of the appointee, and the exercise of this cannot, without A.'s consent, be delegated to another. There are, however, exceptions to the general rule which are as well established as the rule itself. In 1 Mechem on Agency (2d Ed.) § 304, in speaking of the appointing of subagents, or of calling to the agent's assistance others to carry out the purpose of the agency, the author says:

"In appointing them, he may be, not *delegating* the authority, but *exercising* it, and, perhaps, exhausting it in the exercise. Such appointment is not the delegation here involved."

Further on, in referring to the same subject, in sections 315 and 316, it is said:

"315. Where in the execution of the authority an act is to be performed which is of a purely mechanical, ministerial or executive nature, involving no elements of judgment, discretion, or personal skill, the reason for the general rule does not apply, and the power to intrust the performance of it to a subagent may be implied. * * * So an agent authorized to sell real estate, who exercises his own discretion as to the price and the terms, may employ a subagent to look up a purchaser, or to point out the land to one contemplating a purchase. * * *

"316. It is obvious, too, that, notwithstanding the general rule, there are many cases wherein, from the very nature of the duty or the circumstances under which it is to be performed the employment of subagents is imperatively necessary, and the principal's interests will suffer if they are not so employed. In such cases, although the general rule might otherwise apply, an exception is suggested based upon the presumed assent of the principal, and therefore, if he has not manifested a contrary intent, the power to employ the necessary subagents will be implied. The authority of the agent is always construed to include the necessary and usual means to execute it properly."

The text is amply supported by the authorities. See *Renwick v. Bancroft*, 56 Iowa, 527, 9 N. W. 367; *Leech v. Clemons*, 14 Colo. App. 45, 59 Pac. 230; *Boyd & Williams v. Wat-*

*son,* 101 Iowa, 214, 70 N. W. 120; *Henninger* v. *Burch,* 90
Minn. 43, 95 N. W. 578; *Edgar* v. *Caskey* (Alta.) 7 Dom.
L. R. 1912, 45; 21 R. C. L., p. 860, § 38. In *Renwick* v.
*Bancroft,* supra, the decision is clearly reflected in the head-
note, which reads:

"Where an agent was authorized by the owners to sell certain
land, exercising his own discretion as to price and terms after an
examination of the land, it was held that he might properly em-
ploy a subagent to find a purchaser, and that a sale made by such
subagent was binding upon the owners."

In *Henninger* v. *Burch,* supra, the Supreme Court of Min-
nesota said:

"The agent is not required to personally find the buyer, but
may avail himself of the assistance of other agents."

In *Edgar* v. *Caskey,* the Alberta Supreme Court, after
stating the general rule applicable to the delegation of au-
thority by agents, in referring to real estate agents, says:

"The business of selling real estate is one in which the right of
an agent to employ another to dispose of the lands listed with him
may reasonably be presumed. It is common knowledge that this
is a very usual method employed by real estate agents in this
country."

In 21 R. C. L. supra, the author says:

"It is a general rule that, in all cases of delegated authority,
where personal trust or confidence is reposed in the agent, and
especially where the exercise and application of the power is made
subject to his judgment or discretion, the authority is purely per-
sonal, and cannot be delegated to another, unless there is a special
power of substitution, either express or necessarily implied. Hence
an agent cannot transfer the powers and rights which the contract
with his principal conferred upon him personally, to a corporation
organized by him, unless his principal consents thereto. He may,
however, as a general thing, employ others to assist him in the
purely ministerial and unimportant details of his duty. And their
acts, when done in his name, and recognized by him either spe-
cially or according to his usual mode of dealing with them, are
regarded as his acts, and as such binding on his principal. Fur-
thermore, authority to employ subagents or assistants may be in-
ferred in the absence of an express authorization, wherever there
is a necessity therefor or the employment of subagents is usual
and customary."

The "method employed" in Canada certainly cannot well be more common there than it is with us. To hold that a real estate agent, who follows and complies with the **3** terms, directions, and conditions imposed by the owner of the property, cannot act through another in effectuating a sale, would revolutionize the business. It no doubt would perhaps be better form' if the one acting for the authorized agent conducted all negotiations in the name of the authorized agent, but even that, in the nature of things, is not controlling. Indeed, it may not be material. That such is the case clearly appears from the decision in *Renwick* v. *Bancroft*, supra.

In the instant case Mrs. O'Byrne was familiar with the business conducted by the Skeens. She knew that they were working together in the same office, and she never questioned the authority of either to act until it became necessary to do so to defeat respondents' claim. The whole ob-  **4** jection was manifestly an afterthought. Moreover, in order to accomplish her purpose, she conveyed the property to another, with the understanding, as the records shows, that she would protect him. In view of both the law and the fact, therefore, the trial court erred in concluding that the acts of J. H. Skeen did not bind Mrs. O'Byrne merely because the former negotiated the sale with respondents and obtained the initial payment from them. The court was therefore clearly right in denying the motion for nonsuit.

There is no merit in the contention that the district court erred in excluding proffered evidence of Mrs. O'Byrne respecting the agency of M. Skeen Realty Company.  **5** The proffered evidence, in any view that may be taken of this case, could not have changed the result. The error, if any, was therefore entirely harmless.

The contention that the court erred because it granted specific performance of an agreement different from the one alleged in respondents' complaint, in view of what has been said, is also untenable. This is an equitable proceeding. The facts are all found, and the mere fact that the court, from the undisputed evidence, arrived at the wrong

conclusion, is quite immaterial. The judgment is    **6** clearly right, and is as clearly supported by the evidence. The court's conclusion may therefore be disregarded.

The assignment that the court erred in requiring respondents to file an amended complaint to "conform to the facts and the court's decision" after the trial had concluded is wholly without merit. In view of what has    **7** been said, and in view of the overwhelming weight of the evidence, there was no necessity whatever for filing an amended complaint. The mere fact that one was filed, however, could neither help nor harm anyone, and hence this assignment is immaterial.

Nor is there any merit to the final contention that the court erred in failing to make disposition of the $250 which Mrs. O'Byrne received from J. H. Skeen, and which she refused to retain after she learned who the purchasers of the property were. True, J. H. Skeen received $500 as the initial payment from the respondents, and only paid Mrs. O'Byrne $250, or one-half the amount received by him. By the terms of her agreement she was, however, to receive only $2,250 for the property net. She refused to be bound for any compensation or commission to the Skeens, and hence they were obliged to obtain compensation    **8, 9** for their services in some other way. The followed what is known to be a common practice, namely sold the property for a sum in excess of the owner's price (where a net price is fixed), and retained the difference between the owner's net price and the price for which they sold the property. In view that Mrs. O'Byrne had set her price and declined to be liable for any commission, the Skeens were clearly within their legal rights in retaining the $250 out of the first payment, and in view that the district court has affirmed the sale and has decreed specific performance, that ends the whole matter, since, by the decree Mrs. O'Byrne is to receive the full selling price for her property, namely, $2,250, and the respondents must pay the amount agreed by them, $2,500, of which the Skeens may retain the $250 as their commission.

Upon the whole record, the judgment of the district court is clearly right, and the same is therefore affirmed, with costs.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.