GRIFFIN v. ROSENBLUM
(No. 1802; June 27, 1933; 23 Pac. (2nd) 348.)

For the plaintiff in error, the cause was submitted on the brief of *Lee & Lee* of Cheyenne, Wyoming.

42.

The cause was submitted for the defendant in error upon the brief of *Thomas Hunter* of Cheyenne, Wyoming.

BLUME, Justice.

The plaintiff, Jake Rosenblum, sued the defendant, Margaret E. Griffin, for $1400 as a commission for finding a purchaser for the defendant's property in Cheyenne. The court gave judgment for the plaintiff and the defendant has appealed. The parties will herein be referred to as in the court below.

The testimony in the case is strangely conflicting and irreconcilable. The defendant, apparently an old lady not very well able to look after her own affairs, has a son, Joe Griffin, who, according to her testimony, transacted all of her business, except a few personal matters; that the sale of the property had

been turned over to him, and that whatever "Joe says, that will be the law to the deal." She admitted that the plaintiff came to her house in January, 1930, to talk to her about the sale of the property, but she testified that he did not say anything about paying him for his services. The plaintiff, a licensed real estate dealer, testified that Joe Griffin, as early as 1929, employed him to find a purchaser for the property; that he had previously found a tenant for it; that he tried to induce several persons to buy it; that he went to the chancellor commander and the board of trustees of the lodge of Knights of Pythias; that negotiations were carried on by him and Joe Griffin with the board of trustees of this lodge for a long time; that in January, 1930, the board of trustees of the lodge wanted a written offer for sale; that he went to the defendant personally to get it; that she told him that she would submit an offer in writing and hand it to him through her son Joe; that this was done; that the negotiations finally, on a Friday in April, 1930, resulted in an agreement for the sale of the property to the lodge for the sum of $28,000; that he immediately thereafter went to the defendant's house and told her that he had sold the property; that she then stated that she was very happy, and "it is nice, this $28,000; I hoped to get $26,000, and the balance, I suppose, will go for commissions;" that the deal was not, however, closed on that day because defendant did not like to do so on a Friday. The agreement reached was completed and the property sold to the lodge about two weeks later. There is no dispute that on the Friday mentioned there were present Joe Griffin, the plaintiff and the three trustees for the lodge. Further, there is no doubt that the plaintiff interested himself in the sale of the property to the lodge, and one of the witnesses testified that "he was quite active in connection with this deal." It is shown that $1400

is á reasonable commission herein. The plaintiff was to some extent corroborated by his wife as to the authority given him by Joe Griffin to find a purchaser for the property in question. But the latter denied it. He admitted that the written offer above mentioned was submitted to the lodge through the plaintiff, but claimed that this was done because the chairman of the board of trustees was sick, and that he gave the offer to the plaintiff only because he understood that he, being a member of the lodge, would be present at its meeting that evening.

Defendant claims that the judgment is not sustained by sufficient evidence. We must, for the purpose of this decision, accept the testimony most favorable to plaintiff. Doing so, there can be no doubt that the plaintiff was not a mere volunteer, and was employed to help find a purchaser for the property in question, at least by Joe Griffin. That is shown, we think, not only by plaintiff's testimony, but also by the circumstances in the case. But it is argued on behalf of defendant that Joe Griffin was but an agent; that ordinarily an agent cannot employ a sub-agent without the principal's consent; that there is no evidence in this case that Joe Griffin had authority to employ the plaintiff and that the evidence of ratification is insufficient; that Joe Griffin's authority cannot be implied from his relationship to defendant, and that at most the plaintiff was Joe Griffin's and not the defendant's agent. The rule undoubtedly is that an agent cannot, without the principal's consent, delegate powers which involve judgment or discretion. 2 C. J. 685; Mechem, Agency (2nd ed.), Sec. 306. And there are many authorities which hold that among the powers which ordinarily cannot be so delegated is the power to sell real estate. 2 C. J. 686 and cases cited; Mechem, supra, Sec. 308. Some of the cases in these citations involve the power of

personal matters; that the sale of the property had the subagent to bind the principal, while others involve the question as to the right of the subagent to receive compensation from the principal. Where it is the usual custom of a trade or business to employ subagents, then the principal, in the absence of proof to the contrary, is presumed to consent that agents appointed by him may appoint subagents within the limits of such custom. 2 C. J. 690; Mechem, supra, Sec. 318. It is probably partially under this rule, and partially upon the principle of absence of judgment or discretion (Williams v. Moore, 24 Tex. Civ. App. 402, 58 S. W. 953, 955) that it is held by some authorities that an agent authorized to sell real estate, who, as in the case at bar, exercises his own discretion as to the price and the terms, may employ a subagent to look up a purchaser and bind the principal by the act of the subagent. Mechem, supra, Sec. 315; Renwick v. Bancroft, 56 Ia. 527, 9 N. W. 367; Edgar v. Caskey, 7 Dom. L. R. 192; Shaw v. O'Byrne, 64 Ut. 139, 228 Pac. 570; and see McKinnon v. Vollmar, 75 Wisc. 82, 43 N. W. 800 17 Am. St. Rep. 178; 6 L. R. A. 121. Thus, in Edgar v. Caskey, 7 Dom. L. R. 192, 45, the Alberta Supreme Court said:

"The business of selling real estate is one in which the right of an agent to employ another to dispose of the lands listed with him may reasonably be presumed. It is common knowledge that this is a very usual method employed by real estate agents in this country."

This was approved by the Supreme Court of Utah in the case of Shaw v. O'Byrne, 64 Utah 139, 228 Pac. 570, 573, where the court said:

"The method employed in Canada certainly cannot well be more common there than it is with us. To

hold that a real estate agent, who follows and complies with the terms, directions and conditions imposed by the owner of the property, cannot act through another in effectuating a sale, would revolutionize the business."

It is not altogether clear whether all the cases on the subject would agree to this rule. And we think that we should mention the fact that it is not clear whether the courts which decided the cases last cited would further hold that the subagent could, under the facts therein disclosed, have looked to the principal for compensation. It is said in Williams v. Moore, supra,—whether logically or not need not be decided —that there is a distinction which must not be lost sight of between the right of an agent to perform a ministerial act by another, and the power to bind the principal for compensation to the subagent. Many cases have held that a subagent must look for compensation to the main agent, and not to the principal in the case. James Bradford Co. v. Hill, Son & Co., 1 W. W. Harr. 546, 116 Atl. 353; Baker-Riedt Motor Company v. Moore, 93 Okl. 153, 220 Pac. 25; Mitchell v. Teague (Tex. Civ. App.) 233 S. W. 1040; Sterrett v. Shoemaker, 47 App. D. C. 455; Hanback v. Corrigan, 7 Kans. App. 479, 54 Pac. 129; Bonwell v. Howes, 15 Daley 43, 2 N. Y. S. 719; Groscup v. Downey, 105 Md. 273, 65 Atl. 930; 1 Am. & Eng. Ency. of Law, 395, and cases cited; 2 C. J. 778-779. These cases involve the authority of a special agent to sell, and doubtless all were decided upon the principle that there was no privity of contract between the principal and the subagent. In fact we have found no case where a special agent to sell was appointed, in which the subagent has been able to recover compensation from the principal without some proof showing privity of contract between him and the subagent,—that is to say, without some proof that the principal made

the subagent his agent. See Mechem, supra, Sec. 330. We have believed it necessary to state the foregoing so that there need be no misunderstanding in the future. We have in the case at bar something more than a special agency to sell real estate. It is true, as counsel say, that the relation of agency cannot be inferred from mere relationship or family ties unattended by conditions, though such relationship is entitled to weight in connection with other circumstances. 2 C. J. 440. The agency in the case at bar, however, is admitted. The only question is how extensive it was. In view of the fact that Joe Griffin attended to all of the defendant's affairs except a few personal matters, it would seem that he must be considered as a general agent. Whatever he did was, according to defendant's testimony, "the law to the deal." That is a broad and comprehensive power. It was said in Garlick v. Morley, 147 Wise. 397:

"If a person actually or apparently clothes another with authority to represent him generally or in a particular line of business, he is bound by whatever contract such other may make within the scope of the actual or apparent authority, including the making of subagency contracts."

And in that case, the subagent was held to be entitled to sue the principal for a commission. So, too, in the case of Gold v. Serrell, 6 Misc. 124, 26 N. Y. S. 5, 6 an action by a sub-agent to recover a commission, the court among other things said:

"As general agent of defendant respecting the sale and control of her real property, Syms had implied authority to employ others to assist him in the transaction of the business affecting it who could look to the principal for compensation."

In the case of Lee v. Conrad, 140 Iowa 16, the

power conferred upon the agent to sell was not as broad as the power conferred upon Joe Griffin in the case at bar, and yet a subagent was held entitled to a commission. There the plaintiff and defendant were joint owners of real estate and one of them was given authority to sell it. He employed a real estate broker, who sued for a commission. The court said:

"It seems to us that the authority given by Showalter to his co-owner Conrad to make a contract for the sale implied authority to agree to pay a commission. The power to make a sale—that is to negotiate a contract for a sale—is a different power from that conferred by a naked power of attorney to convey. Conrad does not appear to have had the authority to convey, but on the other hand the general authority to negotiate a sale, and that included the authority to do those things usually incident to negotiating a sale of real property by the owner, of which the payment of a commission is one. The whole transaction must be looked at in the light of the circumstances. Conrad was not a real estate agent, but was in the possession of the farm, with authority to negotiate a sale of it as any owner would usually negotiate the sale of his own property, and to that purpose the employment of an agent to procure a purchaser is a usual incident."

In the case at bar, Joe Griffin was not a real estate agent. We need not go so far as to hold that he was required to have a broker's license in order to effectuate a sale for his mother, but the power conferred upon him would seem to have been broad enough to do everything usually done by an owner, including the employment of a real estate broker, particularly in view of the evidence of ratification which appears in the record. There can be no doubt, in view of the evidence, that the defendant was ready to ratify the acts of her son in employing the plaintiff. She knew of that employment as early as Jan-

uary, 1930, four months before the sale to the lodge was made. She agreed, according to plaintiff's testimony, to cause a written offer to be placed in plaintiff's hands, so that he might submit it to the lodge. So far as the evidence in the record indicates, there was nothing to suggest to her that plaintiff was acting gratuitously or on behalf of the lodge. Joe Griffin claims that the written offer was given to the plaintiff as a member of the lodge. Even if that were a plausible explanation so far as he is concerned, there is no evidence that the defendant knew plaintiff to be such member. There is further evidence that defendant was again informed of plaintiff's connection with the sale on the day when the terms and price agreed on, and that she then expected to pay a commission of $2000. While it is not explicitly shown that she expected to pay that to plaintiff, it is not likely that she expected to pay it to her son. It is true that there is no direct evidence that Joe Griffin told plaintiff that he was acting on behalf of the defendant, but there is no dispute of the fact that he was. Nor is there any doubt, if we can credit the testimony on the point, that plaintiff understood that he was acting in her behalf. On the whole, we think that there was sufficient evidence in the record to warrant the trial court in finding in favor of plaintiff on the question of agency. The case of Addison v. Wanamaker, 185 Pa. St. 536, 39 Atl. 1111, much relied on by counsel for defendant, is not in point.

It is argued that the evidence is insufficient to show that the plaintiff was the producing or efficient cause of the sale. We do not find the cases cited by counsel on that subject in point. There is some evidence in the record tending to show that some one connected with the K. P. lodge had from time to time prior to 1930 talked about the lodge buying the building. But

these talks were indefinite and carried on over a number of years. The trial court was, we think, justified in finding that real and earnest consideration was given to the matter only after the plaintiff became interested therein. Of course, there is no definite way to tell whether the efforts of the plaintiff, or of Joe Griffin, or of both, or of neither, finally induced the lodge to buy the property. But there is evidence in the record that plaintiff was active in the matter, that he interviewed the chancellor commander and the board of trustees of the lodge. All he undertook to do was to find a purchaser, and we think that there is sufficient evidence in the record to warrant the trial court in finding that issue in favor of plaintiff.

There was evidence offered in the trial below tending to show that plaintiff was acting for both parties in the transaction without defendant's knowledge, and that plaintiff acted against the interests of the defendant. But that was denied by the plaintiff, and he testified that he communicated to Joe Griffin whatever was said to him in that connection. In view of the conflict of the testimony, which the trial court resolved in plaintiff's favor, it is unnecessary to refer to the cases cited on that subject or to discuss the matter at length.

It is urged that the answer herein alleged that the property in question was sold as a result of negotiations between the defendant and the purchaser carried on over a period of years, and that this must be considered as an established fact since no reply was filed to the answer. We do not think that we are warranted in reversing the case on that ground. It is held that new matter pleaded in an answer requiring a reply must be such as directly or by necessary implication admits the truth of the essential allegations of the complaint, and purports to avoid the same, and

that a reply cannot be required and is never necessary to allegations which are in form new matter, but in substance amount merely to denials. 49 C. J. 326-327. It is obvious that by the allegations above mentioned the defendant did not admit the allegation of the plaintiff that he found a purchaser for the property, but they are in direct contradiction thereof, and while they in form present new matter, they constitute in fact merely a denial.

Finally, it is urged that the court erred in admitting evidence relating to dealings and conversations between the plaintiff and Joe Griffin, on the ground that authority to employ plaintiff was not shown. Since the reason on which the argument rests has been found to be without foundation, it is not necessary to discuss the subject further.

Finding no error in the record, the judgment of the trial court must be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.